## A92A1428. BAEZ v. THE STATE.
(425 SE2d 885)

BIRDSONG, Presiding Judge.

Roberto Baez appeals the denial of his motion to suppress in this prosecution for possession of cocaine with intent to distribute. The evidence was seized with a search warrant on December 12, 1988. Baez' guilty plea sentence was vacated by writ of habeas corpus on the basis of ineffective assistance of counsel. New counsel filed a motion to suppress, alleging, inter alia, that the search stemmed from an illegal pretextual arrest.

Evidence at the suppression hearing showed that appellant was given a citation on November 3, 1988, for failing to have or exhibit a driver's license; Douglasville Police Chief Whisenant testified that he and two other officers served a bench warrant on appellant at his home for his failure to appear in traffic court; after arresting and handcuffing Baez, the officers went in a bedroom where the chief spied a plastic bag containing what seemed to be cocaine. On this basis, the officers obtained a search warrant. Appellant attempted to show that the traffic stop was pretextual and the arrest was pretextual and illegal. He sought to show by a witness that months before this arrest, Baez' neighbor was asked by police to spy on appellant, and this neighbor did spy on appellant.

At the suppression hearing counsel for appellant stated: "Before we . . . go into the motion to suppress . . . *there was a bench warrant . . . or some warrant issued by the City Court of Douglasville. . . .* I've been unable to obtain copies of certain documents, especially that. . . . I'd ask the court to do an in camera and at least grant me that information, if any, prior to the motion to suppress so that I can represent my client effectively. [ASSISTANT DISTRICT ATTORNEY (ADA)]: I don't think the defense has any right to discovery on a motion to suppress. . . . [COUNSEL]: I'm asking the court specifically for procedural due process . . . to allow discovery in this particular case prior to the motion to suppress. *I haven't seen an arrest warrant which the State obviously is going to say validates the arrest* of my client on the date that there was a search; I

haven't seen it; *I don't know whether one exists. . . .* We've asked for — [THE COURT]: *I'll have to see what the evidence produces. . . .* An in camera won't do any good if they're not producing the evidence . . . *I have to go on what I hear from the evidence, not what I see in the file. . . . If they don't want to introduce something, I can't say well, I know it really exists, therefore, I'm not going to hold them to the standard of proof they need on the hearing itself because I know it exists in their file. . . .* [COUNSEL]: I'm not even sure which judge may have signed this particular warrant, *if it in fact exists.*" (Emphasis supplied.)

The State then gave evidence. Police Chief Whisenant testified that on December 12, 1988, he went to appellant's house "on a bench warrant signed by the municipal court judge. . . . [COUNSEL]: [hearsay objection]. *I would object to any mention of any bench warrant without the presentation of that bench warrant in the evidence.* [THE COURT]: I will allow the testimony. You've got to remember, I've heard a lot about this case already; *I know about the existence of the traffic offense, the bench warrant, all this stuff* — [COUNSEL]: *I . . . haven't as the attorney for Mr. Baez seen any bench warrant.* [THE COURT]: There's no need to tiptoe around these things; I know what they're talking about and *it's already been put into evidence in other parts of hearings.* [COUNSEL]: *Judge, I'm not aware of this.* [THE COURT]: So, I'll overrule your objection as to . . . why he went there. Just like the officer says, they went because they had an arrest warrant. [COUNSEL]: But, Judge, in the motion to suppress, *we are attempting to attack this bench warrant. Again, if there is one in existence . . . I would like to see it* and if we're going to . . . have this officer talk about it, *I'd ask the court to order the State to produce it to me so that I can cross-examine this witness. I haven't seen it.* I've looked through the Clerk's files; *it's not in the Clerk's files.* I've gone to the Douglasville Police Department and they tell me they've turned their files over to the State. I did today see . . . the original traffic citation. [Someone] had walked out with the bench warrant; *I was unable to see it, if one exists.* [THE COURT]: *It might show up then.* [COUNSEL]: *I'm asking that I be given the opportunity to see it before this officer is questioned.* [THE COURT]: I'll allow the officer to testify because, in fact, an officer doesn't have to have the warrant in his possession. All he has to know . . . is that it exists. . . . [COUNSEL]: But, *we don't know whether there is in existence a [bench] warrant.* [THE COURT]: He's testifying that the reason he went to his house was to arrest him on a bench warrant that he knew to exist out of the municipal court or the recorder's court. [COUNSEL]: Judge, there is no such animal as a bench warrant that can issue out of a recorder's court. [THE COURT]: Well, that may well be true . . . but if this

officer believed that he was there to make an arrest on such a warrant and that explains his conduct . . . that's his belief. . . . [COUNSEL]: Judge, I would object to that, specifically under *United States v. Hensley*, 469 U. S. 221 (105 SC 675, 83 LE2d 604) [in which the officer] was wrong, and the court said that that's an illegal arrest. [THE COURT]: That was after the evidence was in and somebody had to make a decision; you have to get the evidence in first. . . . [COUNSEL]: *But . . . I as the defense lawyer haven't seen this bench warrant. I don't know whether one exists . . .* and I think before he can testify to the existence that we should be allowed to see one. [ADA]: I'm not asking him to testify to the existence of the arrest warrant; I'm asking him to testify as to why he was at the location on the date in question." (Emphasis supplied.)

Thereafter, the police chief explained that he went to appellant's house to arrest him pursuant to a bench warrant; the police chief did not personally obtain the bench warrant from the recorder's court; he testified the warrant was in the possession of the other officers present, Graff and White. (Graff and White never testified.) Usually when people do not appear for traffic court, the chief simply calls them on the phone and asks them to come down to court; but he intended to arrest appellant and he intended not to allow appellant to make bond and return home; when appellant came out of a bedroom door, the officer handcuffed him and searched him for weapons; when appellant told them his wife was deceased, the chief decided to turn his children over to the Department of Family & Children Services rather than to allow appellant to return; it was only when the police chief went in the bedroom to get the children that he saw money strewn about and, while helping the oldest child pick up the money, he spied the suspected cocaine.

Defense counsel objected: *"I've yet to see a legal entry into this man's house. . . .* [T]hey say it was pursuant to a legal arrest warrant — and I haven't seen any legal act this officer did once that door was open." (Emphasis supplied.) Certain evidence exhibits were introduced, but not a bench or arrest warrant, and counsel said: "There has been some testimony concerning a bench warrant for the arrest of my client. *I don't believe that bench warrant has been offered into evidence at this time. I would certainly make the same objection."* (Emphasis supplied.)

The court recessed and the hearing resumed a week later. The ADA objected that the question as to what "suspicious activity" the traffic officer had observed before stopping appellant, was irrelevant, but counsel responded that the entire subterfuge beginning with the pretextual traffic stop was to effect the search and was illegal. The State conceded that the motion to suppress goes to whether the warrant issued by the magistrate was illegal, but said: "He's saying the

reason he wants to go into the initial stop is because the police have been watching this specific defendant for a year [or] because he's black in an all white neighborhood. . . . [N]either one is alleged in this motion to suppress. . . . [COUNSEL]: *If the State is caught by surprise, I'm sure the court will grant them a continuance. . . . I think there is a remedy for that.* Let's not suppress the truth, Judge. Let me get to the point. [THE COURT]: Get to the point. . . . [COUNSEL]: Officer . . . you can't tell this court what suspicious activity there was; can you? [A]: At this point, I don't really remember. [If I filed a miscellaneous report it would be on file]. . . . [ADA]: The State is not aware . . . of any miscellaneous report . . . in this case." (Emphasis supplied.)

Officer Walker testified that on December 8, 1988, he was in court, signing arrest warrants for failure to appear before the judge. "[ADA]: *And did you have an occasion to sign an arrest warrant for Roberto Baez?* A. *Yes.* . . . Q. And what would have been the cause of the issuance of that arrest warrant? A. That Mr. Baez failed to appear in court." (Emphasis supplied.) The following exchange then took place: "[COUNSEL]: Judge, I believe that *State's Exhibit 1 [the search warrant] may be the warrant which this officer is being questioned about.* May I see the exhibits which have previously gone into evidence? [THE COURT]: I've got State's 1, which is the search warrant, and Defendant's 1, which is the other search warrant; and then these . . . tickets. [COUNSEL]: Judge, I've just been provided a copy of *the warrant* in this particular case." (Emphasis supplied.)

On cross-examination the officer testified that he completed warrants with the judge's instructions for people who fail to appear in court. "Q. And is it your testimony to this court that you signed the arrest warrant? A. The procedure was *the judge would issue a warrant; I would complete that* . . . and *the judge would actually sign the warrants* at the end of the session. Q. *Do you recall Mr. Baez's case at all? A. Not specifically.* . . . Based on my knowledge that I completed *the warrant* with this information, I would say that he did not [appear in recorder's court that day]. . . . Q. *When did you last see the copy of this warrant?* A. *Approximately twenty minutes ago or thirty minutes ago.* Q. Do you recall this case other than the fact that your signature appears on that warrant? . . . A. I recall [the incident when he was arrested on] a failure to appear warrant; I was not present at the arrest. . . . Q. *[Would you] have requested this warrant to issue?* . . . A. No. . . . If the person . . . did not appear for court, the judge would instruct [whoever was completing the warrants for that] session to issue a warrant. . . . Q. When did you hear about Mr. Baez next? A. I participated in execution of the search warrant. . . . Q. Going back to the bench warrant itself, are you familiar with the procedure which is used by the Douglasville Police

Office when someone does not appear? [ADA]: [Objection] The officer testified that it was an arrest warrant, not a bench warrant. . . . [COUNSEL]: I'm not going to characterize it as a bench warrant or an arrest warrant . . . because I'm alleging that anything that was issued by this [police] officer was in fact illegal. [THE COURT]: Well, this officer has not issued anything; he said the court issued it. . . . This officer is not authorized to issue arrest warrants. He's not a judicial officer. If it's an arrest warrant, it would have to be done by some judicial [officer]. [COUNSEL]: (Interposing) *And at this time no warrant concerning that is in evidence is my understanding.* [THE COURT]: *No, I don't have . . . in the pile any arrest warrant or bench warrant.*" (Emphasis supplied.) *Held*:

1. The State, i.e., the prosecutor, made an assumption that the State did not have to prove appellant's arrest was lawful or that the police entry into appellant's home was lawful or that there ever existed an arrest warrant. The State assumed that when a criminal defendant challenges whether an arrest warrant even existed, the State has no burden whatever to prove it existed, so long as several persons assert that they saw an arrest warrant somewhere. On these assumptions, the State was allowed to introduce illegal evidence as if it were obtained through a lawful arrest. The State is incorrect in its assumptions and wastes judicial resources by proceeding in a prosecution based on challenged evidence, with no intention of producing a lawful arrest warrant, and offering no excuse whatever for its absence, thereby forcing the appellate court to suppress evidence illegally obtained.

The constitutional right of criminal suspects to be free of unlawful search and seizure is the same as the right of other persons, for our law does not presume guilt; the right protected, that of presumptively innocent people to be secure in their homes from unjustified, forcible intrusions by the government, is weighty, and it is not outweighed by practical problems. *Otwell v. State*, 201 Ga. App. 71, 73 (410 SE2d 178). The State has the burden to prove that a challenged search or seizure was lawful; a search challenged on any grounds is governed by OCGA § 17-5-30 (b), which provides that on a motion to suppress alleging an unlawful search or seizure, "[t]he judge shall receive evidence . . . on any issue of fact necessary to determine the motion; and the burden of proving that the search and seizure were lawful shall be on the state." See *State v. Slaughter*, 252 Ga. 435, 439 (315 SE2d 865).

If there was no arrest warrant, the police entry into appellant's home was unlawful and his arrest was unlawful. The fruits of an unlawful arrest may not be introduced into evidence. *Moore v. State*, 155 Ga. App. 299, 300 (3) (270 SE2d 713). Although the trial court stated it thought an arrest warrant was introduced in other proceed-

ings in this prosecution, nowhere is this proven, and according to the statement of the clerk of court below on request of this court, an arrest warrant was never a part of the record below.

The police chief who entered appellant's house with two other officers by use of a purported arrest warrant testified he did not have the warrant and he believed officers Graff and White had the arrest warrant. Officers Graff and White never testified. The officer who testified he filled out the arrest warrant for issuance did not remember the particular instance; in any case, as the trial court correctly noted, this officer was not a judicial officer; he could not issue an arrest warrant and he did not issue an arrest warrant in this case. This officer implied that he was looking at "the" warrant on the stand, but in fact he testified he last saw "the arrest warrant" 20 minutes before the hearing. An arrest warrant was not put in evidence while he testified or at any other time. The participants in the suppression hearing refer obscurely to "this warrant" and "the warrant" or "the warrant in this case," but it is entirely speculative what warrant or document the witnesses refer to. As it is clear the trial court had only the search warrant before it and affirmed it had no arrest or bench warrant before it, and no arrest warrant was ever introduced despite appellant's repeated demand, no assumption can be made that "the warrant" referred to an arrest warrant. No arrest warrant was ever introduced. No judicial officer testified that he or she issued an arrest warrant. Despite appellant's counsel's repeated objections and requests, the trial court did not require the State to produce an arrest warrant or even account for its absence. The State never suggested it might produce an arrest warrant if it had a continuance. A week's recess was taken in the middle of the suppression hearing, yet after court resumed the State still did not produce an arrest warrant. Despite its assurance to appellant that it would not hold the State to a lesser standard of proof, the court did so, and ruled on evidence which was not before it. If there was an arrest warrant in existence, no reason whatever appears for the State's refusal to put it in evidence in the face of so many repeated objections and demands. The State's refusal and inability to produce an arrest warrant in this case cannot be viewed as a mere oversight, particularly as the State was mute when at the end of the hearing appellant demanded that the trial court confirm in the record that it had no arrest warrant before it, and the trial court so confirmed. The State therefore forces the appellate court to conclude no arrest warrant existed at the time of the suppression hearing.

The State did not produce an arrest warrant even when appellant challenged its existence, and the record otherwise fails to reveal sufficient facts to sustain the State's burden of proof. Accordingly, the State failed to carry its elementary burden to prove the lawfulness of

the intrusion and arrest which resulted in the discovery of the contraband (see *State v. Mincey*, 167 Ga. App. 850 (2) (308 SE2d 18); *Reddish v. State*, 161 Ga. App. 170 (288 SE2d 266); *Liskey v. State*, 156 Ga. App. 45, 46 (1) (274 SE2d 89); *Bland v. State*, 141 Ga. App. 858 (234 SE2d 692)), and that evidence must be suppressed under the established law of this state.

2. Under the unusual circumstances in this case, where the State continued to insist upon the apparent existence of an arrest warrant but failed and refused to produce and introduce an arrest warrant, this court at oral argument on June 3, 1992, inquired of the clerk below as to whether there was such a warrant. The superior court clerk forwarded to this court a purported arrest warrant with her statement that such document "was never a part of the court record." The document shows on its face that it was filed in the Douglas County Superior Court on July 7, 1992, more than a month after this court's inquiry. Under all the circumstances, the State's presentation to this appellate court of a purported arrest warrant which, despite appellant's repeated demand, the State refused to produce and could not produce at the suppression hearing does not alter the result of this case, for we are bound by law to consider only that evidence which the trial court had before it and which was in the record before the trial court when it made its ruling; we are not authorized to receive or consider evidence which the record shows was not before the trial court,. or evidence which by any procedural vehicle has been added to the record. See *Consolidated Government &c. v. Williams*, 184 Ga. App. 815, 817 (363 SE2d 20); see also *Thomas v. RGL Assoc.*, 200 Ga. App. 283 (407 SE2d 420); *Chan v. W-East Trading Corp.*, 199 Ga. App. 76, 77 (3) (403 SE2d 840).

*Judgment reversed. Beasley and Andrews, JJ., concur.*

## On Motion for Reconsideration.

The State insists there was no evidence an arrest warrant did *not* exist; and that during the hearing defense counsel stated he had just been given "the warrant" and that he "never questioned the existence of the arrest warrant again." This is incorrect. Defense counsel never said he was given an arrest warrant and he never conceded an arrest warrant existed.

The State says Officer Walker's testimony concerning "this warrant" proves he was looking at an arrest warrant on the witness stand. There is no evidence the officer was looking at an arrest warrant. If he had been looking at an arrest warrant or if there was one in the courtroom, the State would have introduced it, especially at hearing's end when defense counsel asked the court to confirm that no arrest was before it and the court so confirmed. The existence of an arrest warrant was repeatedly questioned and its production demanded; the

only rational reason the State would not have introduced an arrest warrant at that point is that there was none.

Since the State never introduced an arrest warrant, defense counsel's questioning as to "this warrant" could only have been an abstract reference to "this alleged warrant." In answer to counsel's question, the officer testified he had last seen a copy of "this warrant" 20-30 minutes ago; a point prior to the hearing at which the witness saw "this warrant" would have no relevance whatever unless defense counsel was thereby attempting to locate "this warrant."

The telling fact is that the State disdained to introduce an arrest warrant despite emphatic assertions by counsel that, to his knowledge, an arrest warrant never existed and despite repeated demands that the State produce "this warrant." An arrest warrant was never a part of the record in this prosecution. The State implies the burden lay upon the defense to prove the arrest warrant did *not* exist, but the State had the burden to prove legality of the arrest. By saying there was in existence an arrest warrant which the State disdained to introduce, the State asserts it had no burden to prove legality of the arrest and claims that, although it had an arrest warrant in the courtroom, it had no intention or obligation to introduce it either to sustain its legal burdens, or to satisfy the defense, the trial court, and this court that an arrest warrant did exist. It is also virtually an assertion that the State need never prove an arrest warrant existed, which virtually asserts that the police did not need an arrest warrant.

*Motion for reconsideration denied.*

DECIDED OCTOBER 28, 1992 —
RECONSIDERATION DENIED DECEMBER 1, 1992.

*Alden W. Snead, J. M. Raffauf*, for appellant.
*David McDade, District Attorney, J. David Fowler, Assistant District Attorney*, for appellee.