### A93A1958. KING v. THE STATE.
(438 SE2d 93)

BLACKBURN, Judge.

On December 9, 1992, an accusation was filed in Ware State Court charging Jerome King, appellant, with driving under the influence of alcohol and simple battery.[1] After King's motion to suppress was denied, he pled nolo contendere to the charge of driving under the influence. King specifically reserved his right to appeal the trial court's denial of his motion to suppress the results of a breath test. This appeal followed.

On October 13, 1992, a Waycross police officer stopped the vehicle which King was driving for the purpose of executing an arrest warrant issued on September 21, 1992, by a Ware County magistrate. The officer making the stop observed that King had been drinking. Based on his observations and evidence obtained during the stop, King was charged with driving under the influence. It is uncontroverted that the only basis for the initial stop was the outstanding warrant on King.

On appeal, King complains that no probable cause had existed for the issuance of the arrest warrant, thereby making any evidence obtained during the stop inadmissible. King also complains that the State failed to prove that facts sufficient for a determination of probable cause were presented to the magistrate who issued the warrant. As King's enumerations are closely related, they will be discussed together.

During the middle of the night on September 20, 1992, Officer Stone, of the Waycross Police Department, was called twice to check disturbances at 210 Thomas Street. At the scene, Ms. Geraldine Taylor accused Jerome King of slapping her around, hitting her in the face, pointing a gun at her face, and pushing her through a window.

---

[1] The trial court severed the simple battery charge from the driving under the influence of alcohol charge and it is not involved in this appeal.

Thereafter, Officer Stone prepared a report detailing the incidents. According to the police department's procedures, Officer Stone gave a copy of his report to the day-watch sergeant. Officer Arvie Dyal prepared an affidavit in which he swore that to the best of his knowledge and belief Jerome King committed the offense of disorderly conduct-family violence, in that on September 20, 1992, in Ware County, King struck Ms. Taylor in the face and pulled a .38 caliber pistol and pointed it at her face. Thereafter, the magistrate issued a warrant for the arrest of King. Officer Stone testified that it is the police department's standard procedure to present the magistrate with a copy of the police report at the time an arrest warrant is sought; however, there was no evidence presented as to whether the magistrate, in fact, received a copy of Stone's report in this case.

Initially, we note that although the issuance of an arrest warrant must be supported by probable cause, an affidavit submitted in support of an application for an arrest warrant need not alone demonstrate the existence of probable cause. *Devier v. State*, 253 Ga. 604 (5) (323 SE2d 150) (1984). On appeal, King concedes that the affidavit submitted to the issuing magistrate complied with the statutory requirements of such affidavits provided in OCGA § 17-4-41. However, he contends that the trial court should have granted his motion to suppress because the arrest warrant was not supported by probable cause.

1. Following his stop of King's vehicle, the arresting officer detected a strong odor of alcohol about King's person. The officer's investigation of that condition led to King being charged with driving under the influence, and to the administration of the breath test that forms the subject of King's motion to suppress. We find that investigation to be untainted by any alleged illegality associated with the arrest warrant, as the arrest resulted from a crime committed in the presence of the arresting officer.

A search and seizure incident to an arrest made pursuant to an invalid arrest warrant may require suppression of tangible evidence so obtained. OCGA § 17-5-30, generally. "However, evidence is not fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." (Punctuation omitted.) *Ruffin v. State*, 201 Ga. App. 792, 793 (412 SE2d 850) (1991), quoting from *Wong Sun v. United States*, 371 U. S. 471, 487-488 (83 SC 407, 9 LE2d 441) (1963).

In the instant case, notwithstanding any alleged infirmity of the arrest warrant on the family violence charge, when the arresting of-

ficer stopped King and observed what appeared to be the commission of another offense in his presence, he had a duty to investigate the matter. In such a situation, the fruit of that investigation cannot reasonably be treated as the fruit of the original, allegedly illegal stop. Where the seizure of evidence thus results from a "second" arrest arising from a police officer's having witnessed the commission of an independent crime, there is sufficient attenuation between the original stop and the evidence regarding the independent crime, so that the latter is untainted by any alleged illegality associated with the former. *Ruffin v. State*, supra. Accordingly, the trial court properly denied King's motion to suppress.

King misplaces his reliance upon *Gary v. State*, 262 Ga. 573 (422 SE2d 426) (1992), in which our Supreme Court, based upon the unequivocal terms of OCGA § 17-5-30, rejected the federally permissible good-faith exception to the probable cause requirement in the execution of a *search warrant*. While *Gary* may apply where a good-faith reliance upon an arrest warrant is necessary to uphold a search and seizure of *tangible property* incident to the execution of the arrest, it has no bearing where the subject evidence is the fruit of a bona fide investigation of an independent crime witnessed by the arresting officer. Further, although the compelled administration of a breath test implicates Fourth Amendment rights, OCGA § 17-5-30 does not govern motions to suppress such evidence. *State v. Johnston*, 249 Ga. 413 (291 SE2d 543) (1982). Inasmuch as the holding in *Gary* is specifically based upon the application of OCGA § 17-5-30, it is inapposite here.

King similarly misplaces his reliance upon *Giordenello v. United States*, 357 U. S. 480 (78 SC 1245, 2 LE2d 1503) (1958), wherein the United States Supreme Court found an arrest warrant unsupported by probable cause under the Federal Rules of Criminal Procedure, thereby rendering the search and seizure incident to the execution of that warrant illegal. Specific deficiencies noted in the affidavit included the lack of an affirmative allegation that the affiant spoke from personal knowledge; no indication of the source of the affiant's knowledge; and the failure to set forth any other sufficient basis which supported a finding of probable cause. See also *Garmon v. Lumpkin County, Ga.*, 878 F2d 1406 (11th Cir. 1989).

In *Giordenello*, the government *relied solely upon the* conclusory *affidavit* to establish probable cause when applying for the arrest warrant. On appeal, the government argued for the first time that under state law even a warrantless arrest of the defendant had been authorized. The Supreme Court acknowledged that in the absence of a controlling federal statute, the law of the state where the arrest occurred determined the federal officers' authority to arrest without a warrant, but refused to consider that argument because the government failed

to raise it before the trial court. However, it did not preclude the government from asserting such ground for upholding the arrest and subsequent search and seizure, in the event of a new trial in the matter.

In the instant case, unlike *Giordenello*, there was no requirement under OCGA § 17-4-41 that the affidavit alone had to demonstrate the existence of probable cause to support the arrest warrant, and the State did not rely upon the validity and execution of that arrest warrant to authorize obtaining the breath test. Rather, as discussed above, the breath test was obtained as a result of the arresting officer's investigation of the DUI offense committed in his presence. Accordingly, *Giordenello* is inapposite here as well.

2. Denial of King's motion to suppress was also proper because the arrest warrant was not shown to be invalid. "The State has the burden to prove that a challenged search or seizure was lawful. . . ." *Baez v. State*, 206 Ga. App. 522, 526 (1) (425 SE2d 885) (1992). In the instant case, it must be emphasized that the only basis for suppression of the breath test asserted by King in his motion was that at the time of the stop of his vehicle, "defendant was acting in a lawful manner, and said authorities had no articulable suspicion or probable cause for said stop." The motion in no way attacked the validity of the arrest warrant; indeed, defense counsel acknowledged that he had not realized until the morning of the hearing on the motion that there had been an arrest warrant. In response to King's motion to suppress, the State thus merely had the burden of showing a legal basis for stopping King's vehicle.

In this regard, OCGA § 17-4-20 authorizes a law enforcement officer to arrest an individual for a crime pursuant to an arrest warrant. It follows that the State met its burden of showing a legal basis for stopping King by producing the arrest warrant and supporting affidavit which the arresting officer was executing when he stopped King. Cf. *Marshall v. State*, 130 Ga. App. 572 (203 SE2d 885) (1974).

King nevertheless argues that the arrest warrant provided no legal basis for stopping his vehicle, because the supporting affidavit alone was insufficient to establish probable cause and the State failed to show that other evidence had been presented to the issuing magistrate to satisfy that requirement. The hearing testimony showed that the police department's standard operating procedure included presenting the issuing magistrate with a copy of the police report when applying for an arrest warrant, but there was no affirmative showing that such was done in this case. However, considering the only basis for suppression of the evidence stated in King's motion, the State had no reason for developing the evidence to make that proof. Rather, upon the State's production of the arrest warrant establishing a lawful basis for stopping King, King had the burden of showing the illegality of that warrant, and he failed to do so. Cf. *Bryant v. Griffin*,

220 Ga. 154 (137 SE2d 640) (1964).

Under these circumstances, the trial court properly denied King's motion to suppress on that basis as well. To hold otherwise would fault the State for King's own failure to prove the illegality of the arrest warrant. This holding is consistent with the respective burdens placed on the State and the defendant movant with regard to motions to suppress filed pursuant to OCGA § 17-5-30, pertaining to unlawful searches and seizures of tangible property. See *State v. Slaughter*, 252 Ga. 435, 439 (315 SE2d 865) (1984).

3. Lastly, we note that the testimony adduced during the hearing on the motion to suppress and the police report contained in the record demonstrated the existence of probable cause to arrest King for an act of family violence as defined in OCGA § 19-13-1. Under OCGA § 17-4-20, even a warrantless arrest for such a violation was authorized, "and the alleged infirmity of the arrest warrant actually obtained did not render the arrest illegal." *Stansell v. State*, 174 Ga. App. 511, 512 (330 SE2d 441) (1985).

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED SEPTEMBER 23, 1993 —
RECONSIDERATION DENIED NOVEMBER 17, 1993 —

*Hackel & Hackel, Thomas M. Hackel*, for appellant.
*Douglas L. Gibson, Solicitor*, for appellee.