## A10A1280. THE STATE v. EDWARDS.
### (704 SE2d 816)

ELLINGTON, Judge.

Pursuant to OCGA § 5-7-1 (a) (4), the State of Georgia appeals from an order of the Superior Court of Fulton County granting Oliver Edwards' motion to suppress evidence and dismissing the charges against him. The State contends that the trial court erred in suppressing the evidence based upon the State's failure to produce the arrest warrant upon which Edwards was arrested and, as a consequence, its failure to prove that, at the time Edwards was arrested, the warrant actually existed. For the following reasons, we reverse.

As an initial matter, it is axiomatic that "[e]vidence of guilt which the defendant, directly or indirectly, is compelled to disclose by an unlawful search of his person under an illegal arrest is not admissible in a criminal prosecution." (Footnote omitted.) *State v. Alexander*, 245 Ga. App. 666, 666-667 (538 SE2d 550) (2000). Under OCGA § 17-5-30 (b),[1] when considering a motion to suppress evidence based upon an allegedly illegal search and seizure, the trial court "shall receive evidence out of the presence of the jury on any issue of fact necessary to determine the motion; and the burden of proving that the search and seizure were lawful shall be on the [S]tate."

> Upon review of the [grant or] denial of a motion to suppress, we must construe the record to support the trial court's findings and judgment. Findings on credibility and conflict-

---

[1] See *Harvey v. State*, 217 Ga. App. 776, 777-778 (459 SE2d 433) (1995) ("The plain language of [OCGA § 17-5-30] shows that it covers all searches, not just those involving search warrants." Thus, "OCGA § 17-5-30 governs every case in which a defendant challenges a search and seizure, regardless of the grounds upon which the challenge is based. . . . OCGA § 17-5-30 *is* Georgia's exclusionary rule." Moreover, because Georgia's exclusionary rule was created by the legislature, not the judiciary, the judicially-created "good faith" exception does not apply to the rule; there is no "good faith" exception unless and until the Georgia legislature adopts one.) (citations and punctuation omitted; emphasis in original); aff'd, 266 Ga. 671 (469 SE2d 176) (1996).

ing evidence must be upheld unless they are clearly errone-
ous. In addition, the trial court is the trier of fact, and its
findings, being analogous to a jury verdict, will not be
disturbed so long as some evidence supports them.

(Citation omitted.) *Buchanan v. State*, 259 Ga. App. 272, 274 (576
SE2d 556) (2002).

So viewed, the evidence in the record shows the following facts.
On the evening of January 1, 2005, two City of Atlanta police officers
went to a house at 115 Hunnicutt Street to investigate a 911
"hang-up" call. As they walked toward the house, the officers saw
Edwards walk out of the front door, down the stairs, and toward
them on the sidewalk. The officers decided to stop Edwards and ask
him if anything was wrong inside the house and to establish his
connection, if any, to the 911 call. The officers asked Edwards for
identification, and while one officer stayed with Edwards, the other
officer knocked on the door of the house. When no one answered the
door, Edwards called someone on his cell phone and, shortly there-
after, a woman answered the door. After speaking with the woman,
the officer concluded that no one was injured or in immediate danger
inside the house.

Even so, the officers decided to check Edwards' criminal history
because Edwards was "very fidgety" and appeared "nervous," "his
body language was suspect," and "[h]e kept putting his hands in his
pockets even after being told not to do so." According to one of the
officers, a police dispatcher told him that there was an outstanding
arrest warrant for Edwards. The officers then arrested Edwards
solely on the basis of the outstanding arrest warrant and conducted
a search incident to the arrest, during which they found a packet of
marijuana. Based upon that discovery, the State charged Edwards
with possession of marijuana with intent to distribute.

Five years later, on February 1, 2010, Edwards waived arraign-
ment and entered a not guilty plea to the charge. The next day,
Edwards filed a motion to suppress the marijuana found in his
possession. In the motion, Edwards challenged the State to prove
that a warrant had previously been issued for his arrest and that the
warrant was still outstanding on the day he was arrested. Two days
after the motion was filed, the trial court conducted a motion
hearing, during which Edwards again argued that the State was
required to produce a copy of the arrest warrant which allegedly
justified his arrest. In response, the State argued that it had no duty
to produce a copy of the warrant, but, even if such duty existed, it
had not had sufficient notice of Edwards' challenge to the existence
of the arrest warrant to obtain a copy of the warrant.

Following the hearing, the trial court granted Edwards' motion

to suppress, finding that the officers arrested Edwards on January 1, 2005, *solely* because one of the officers had been told by a dispatcher that there was an outstanding arrest warrant and not due to the existence of any independent probable cause. In response to Edwards' challenge to the existence of that warrant, however, the State failed to prove that the warrant actually existed at the time of Edwards' arrest.[2] Thus, according to the trial court, the State failed to prove that Edwards' arrest and the search incident to his arrest were lawful.

1. On appeal, the State contends that the trial court erred in granting Edwards' motion to suppress because, at the time of the officers' encounter with Edwards, the arresting officer had been told by a police dispatcher that there was an outstanding warrant for Edwards' arrest. According to the State, although there was no independent probable cause to support Edwards' arrest, the dispatcher's statement to the officer, standing alone, was sufficient to authorize Edwards' arrest. Further, because the officer was authorized to search Edwards incident to his arrest, the marijuana discovered during the search was lawfully seized. As explained below, we are constrained to agree.

"At least three types of police-citizen encounters exist: verbal communications that involve no coercion or detention; brief 'stops' or 'seizures' that must be accompanied by a reasonable suspicion; and 'arrests,' which can be supported only by probable cause." (Citation and punctuation omitted.) *Buchanan v. State*, 259 Ga. App. at 274.

> Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification; and

---

[2] The trial court ruled that "[t]he State has the burden of proving the existence of an arrest warrant if the basis of the arrest is the warrant and the existence of the warrant is challenged," relying upon *Baez v. State*, 206 Ga. App. 522 (425 SE2d 885) (1992). In *Baez*, officers entered Baez's home to arrest him pursuant to an outstanding bench warrant, and, while in the home, they observed contraband that later served as a basis for a search warrant. Id. During the motion to suppress hearing, Baez repeatedly challenged the State to produce the bench warrant to prove that the initial entry into his home was lawful. Id. at 522-526. Although the State failed to produce the warrant, and the evidence failed to show that the arresting officers had any personal knowledge about the existence of the warrant, the trial court denied Baez's motion. Id. This Court reversed, ruling that, by failing to produce the arrest warrant after Baez repeatedly challenged its existence, the State had failed to sustain its burden of proving the lawfulness of the officers' intrusion into Baez's home and his arrest, which had resulted in the discovery of the contraband. Id. at 526-528 (1). Further, upon a motion for reconsideration, this Court expressly rejected the State's suggestion that it "need never prove an arrest warrant existed" under these circumstances, because that would essentially mean that the officers could lawfully enter Baez's home and arrest him without an arrest warrant. Id. at 529.

> request consent to search, as long as the police do not convey a message that compliance with their requests is required. It is clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions.

(Citation and punctuation omitted.) Id. Here, the record supports a finding that the officer's initial approach of Edwards was a "level one," noncoercive police-citizen encounter and that no seizure or detention took place until after the officer investigated Edwards' identification and learned of the outstanding arrest warrant.

On the issue of whether the officers were then authorized to arrest Edwards based upon the report of an outstanding arrest warrant, the Supreme Court of Georgia addressed the issue in a case involving similar facts, *Harvey v. State*, 266 Ga. 671 (469 SE2d 176) (1996). In *Harvey*, an officer who was responding to a report of suspicious activity encountered Harvey and obtained his identification. Id. The officer requested a computer check through the Georgia and National Crime Information Centers ("NCIC"), and the check revealed that there was a bench warrant for Harvey's arrest. Id. The officer asked the dispatcher to confirm the status of the warrant and was told that it was still valid and outstanding. Id. After placing Harvey under arrest pursuant to the warrant, the officer conducted a search incident to the arrest and discovered cocaine. Id. The State later discovered that the bench warrant had been recalled prior to Harvey's arrest. Id. Still, the trial court denied Harvey's motion to suppress the cocaine, and, in affirming the denial, the Supreme Court ruled as follows:

> A warrantless search is authorized if conducted pursuant to a lawful arrest. OCGA § 17-5-1. It is undisputed that Harvey was not lawfully arrested pursuant to the bench warrant itself, since that bench warrant had been recalled several days before Harvey was arrested. However, the validity of an arrest is not necessarily dependent upon the existence of a valid arrest warrant because[,] if the person detained is outside of his home and probable cause to arrest exists at the time of detention, a warrant is not required. If, when the arrest is made, the facts and circumstances known to the arresting officer are sufficient to warrant a prudent person in believing that the accused had committed or is committing an offense, the warrantless arrest passes constitutional muster. Accordingly, resolution of this case ultimately is dependent upon whether, at the time of Harvey's arrest, the officer had probable cause to make that arrest.

At the moment the arrest was made, the officer knew that a valid bench warrant had been issued for Harvey's arrest. The radio transmission, which confirmed the outstanding warrants, established the necessary probable cause to arrest Harvey. It is of no consequence that the officer later discovered that the validly issued bench warrant had been recalled. The existence of probable cause must be measured by current knowledge, i.e., at the moment the arrest is made and not hindsight.

The material inquiry is whether the facts within the officer's knowledge at the time of the arrest constituted reasonably trustworthy information which was sufficient to authorize a prudent person to believe that Harvey had committed an offense. While the NCIC printouts would not be sufficient to authorize *conviction*, they have been held to be reliable enough to underlie the reasonable belief which is needed to establish probable cause for arrest. Thus, Harvey's arrest was lawful since the evidence shows that the officer was acting on reliable information that there was an outstanding felony warrant against Harvey. In relying upon the computer report, the officer was quite wrong as it turned out, and subjective good-faith belief would not in itself justify either the arrest or the subsequent search. But sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officer's mistake was understandable and the arrest a reasonable response to the situation facing him at the time.

Although in arresting Harvey, the officer relied upon the misinformation from the NCIC, he neither knew, nor could be reasonably expected to have known, that the information was incorrect when he made the arrest. The information, which subsequently was proven wrong, was stale by only four days. This Court, in hindsight, will not declare an arrest to be invalid when the arresting officer reasonably relied upon information which he had no reason to think was incorrect.

(Citations and punctuation omitted; emphasis in original.) Id. at 672-673. See also *Lucas v. State*, 284 Ga. App. 450, 452-453 (644 SE2d 302) (2007) (accord); *Howard v. State*, 273 Ga. App. 667, 668-669 (1) (615 SE2d 806) (2005) (accord); *Buchanan v. State*, 259 Ga. App. at 274-275 (accord). Thus, pursuant to *Harvey* and its progeny, if an officer stops an individual outside his home, requests a computer check on the individual, and is told that there is an

outstanding arrest warrant for the individual, the officer may lawfully arrest the individual and search him or her pursuant to the arrest, and any seized contraband will be admissible to support additional criminal charges against the individual, even if it is later discovered that no valid warrant existed at the time of the arrest.

It is important to note, however, that three of the seven justices on the Supreme Court dissented in *Harvey*. In his dissent, Chief Justice Benham (joined by Presiding Justice Fletcher and Justice Sears) emphasized that the sole basis for Harvey's arrest was the outstanding arrest warrant — no other basis for probable cause existed. Id. at 675. Thus, Harvey's arrest was *not* a warrantless arrest supported by probable cause; instead, *it was an unlawful arrest because it was based upon an invalid warrant*. Id. Chief Justice Benham then stated as follows:

> [I]n its effort to avoid the effect of binding precedent without facing up to the necessity of overruling it, [the majority] indulges in circular reasoning: the arrest pursuant to the warrant was invalid, but the search is valid if there was probable cause to arrest, and the warrant provided that probable cause. What the majority opinion asserts, in plain language, is that the warrant, although entirely invalid, provided sufficient probable cause to arrest. That is plainly contrary to reason and to the law of this state.

Id. at 675 (Benham, C. J., dissenting). Further, Chief Justice Benham pointed out that the majority used an out-of-context quote from *Singleton v. State*, 194 Ga. App. 423 (1) (390 SE2d 648) (1990), to support its broad and formidable holding that "[t]he radio transmission, which confirmed the outstanding warrants, established the necessary probable cause to arrest Harvey."[3] (Punctuation omitted.) Id. According to Justice Sears' dissent, in reaching that conclusion, the majority ignored established precedent, as follows: "[M]ere receipt of a bulletin or 'computer hit' does not provide probable cause justifying an arrest if the information in the computer system is inaccurate." Id. at 678, quoting *State v. Stringer*, 258 Ga. 605, 607

---

[3] As Chief Justice Benham explained:
In *Singleton*, . . . there was no question regarding the validity of the warrant. The quoted statement was made in that case to refute the appellant's argument that the officers were required to have the warrants in their physical possession at the time of the arrest. That statement does not fairly stand, as the majority opinion used it, for the proposition that probable cause is established by information about the existence of a warrant which later proves to be invalid.
Id. at 675-676.

(372 SE2d 426) (1988).[4]

As such, the dissent in *Harvey* raises serious concerns about whether Georgia's courts should condone the arrest of an individual when: the arrest occurs outside his or her home; the arrest is not supported by independent probable cause, but, instead, is based solely upon a dispatcher's statement to an officer or a computer check showing that there is an outstanding warrant for the individual's arrest; and the State subsequently fails to prove that a valid arrest warrant existed at the time of the arrest.

We share these concerns. As in *Harvey*, the arrest in this case was *not* a warrantless arrest that was based on probable cause arising from any suspicious actions by Edwards. *It was, simply and indisputably, an arrest based upon an outstanding warrant.* Thus, when Edwards subsequently filed his motion to suppress challenging the State to prove that a valid arrest warrant existed when he was arrested, the State was on notice that it needed to produce the warrant or other evidence establishing the existence of the warrant.[5] See *Baez v. State*, 206 Ga. App. 522, 526-528 (1) (425 SE2d 885) (1992).

Nevertheless, because we are compelled to follow Supreme Court precedent as enunciated in *Harvey*, we must conclude that the dispatcher's statement to the officer in this case that there was an outstanding arrest warrant for Edwards provided the probable cause necessary to arrest him and that, as a consequence, the search incident to the arrest was lawful.

2. This should not end the analysis, however, because there is another troubling gap in the evidence propounded by the State in this case. As shown above, Edwards' motion to suppress challenged the State to produce the arrest warrant that it claimed was the basis of his arrest. Instead of producing the warrant during the hearing, though, the State only presented the testimony of the arresting

---

[4] See also *State v. Fowler*, 215 Ga. App. 524, 525 (451 SE2d 124) (1994) ("That which is insufficient in its own right cannot be made sufficient by the fact that it is broadcast over a police network.").

[5] To be clear, we are not suggesting that the officer acted improperly or unreasonably in arresting Edwards — he was entitled to rely on the information he received from the dispatcher and was not required to conduct further investigation before executing the arrest. However, the fact that the officer acted properly at the time of the arrest does not obviate the State's burden of producing sufficient evidence during a subsequent suppression hearing that the information relayed to the officer regarding the arrest warrant was reliable. See *Duke v. State*, 257 Ga. App. 609, 611 (571 SE2d 414) (2002) (Although an officer was entitled to rely on information received over the police radio when conducting a traffic stop, "to survive a Fourth Amendment challenge, the [S]tate had to present some evidence of the factual basis for the . . . dispatch. Since the deputy was unable to provide such evidence, it was incumbent upon the [S]tate to produce it from some other credible source.") (footnote omitted); see also Division 2, infra.

officer, who testified that a dispatcher told him that there was an outstanding warrant for Edwards' arrest. But, because the officer had no personal knowledge of any outstanding arrest warrant for Edwards, he was unable to provide any information about the warrant, such as the warrant number, what court issued the warrant, when that court issued the warrant, what charge provided the basis for the warrant, or whether the warrant was still outstanding at the time of Edwards' arrest. In fact, it is undisputed that the officer's limited knowledge about the arrest warrant was based entirely on information he received from a police dispatcher who was never identified, let alone called to testify, during the motion hearing. As such, the officer's testimony regarding what the dispatcher said to him was hearsay — the State offered it not only to explain why the officer arrested Edwards, but also *to prove that the arrest was lawful because it was based on an outstanding warrant for Edwards' arrest*. Thus, this raises the issue of whether the officer's hearing testimony was both admissible and sufficient to prove that, at the time of Edwards' arrest, there was, in fact, an outstanding warrant for his arrest.

This Court recently addressed a similar issue in *Sosebee v. State*, 303 Ga. App. 499, 501 (1) (693 SE2d 838) (2010), noting that,

> [i]n order to take a witness's testimony outside the scope of hearsay, when such testimony is introduced to prove the truth of the fact stated, the witness must have personal knowledge of the facts to which such witness is testifying. The hearsay rule that a witness must testify from his own first-hand knowledge to establish a fact clearly applies to law enforcement officers.

(Citations, punctuation and footnotes omitted.) Id. In *Sosebee*, this Court concluded that the State had failed to prove that the search of a hotel room was conducted pursuant to a valid search warrant when the State failed to produce the warrant or supporting affidavit during the motion hearing, instead relying upon the hearsay testimony of the sheriff who had conducted the search. Id. at 501-502 (1). The sheriff admitted that he had not procured, or even seen, the warrant prior to the search but, instead, had only heard from someone else that a search warrant had been issued.[6] Id. Conse-

---

[6] In *Sosebee*, this Court noted that, although an officer may rely upon hearsay information communicated to him by fellow officers in order to establish probable cause for issuance of a search warrant, "the issue here is not whether there was probable cause for the warrant, *but the very existence of the warrant*." (Emphasis supplied.) Id. at 501 (1), n. 3. The same is true for the instant case — Edwards challenged the State to prove that the alleged arrest warrant

quently, this Court reversed the trial court's denial of the defendant's motion to suppress. Id. at 502 (1).

It is significant to note that, in *Sosebee*, the sheriff had been actively involved in the investigation that allegedly resulted in the issuance of the search warrant and at least had some contemporaneous, personal knowledge upon which to base his belief that a warrant had, in fact, been issued that day. Id. at 500. In stark contrast is the instant case, wherein the arresting officer had *no personal knowledge* about the outstanding arrest warrant, including whether the warrant was hours, days or even *years* old, yet his testimony was the only evidence presented by the State during the suppression hearing.

The hearsay issue was not discussed in the Supreme Court's opinion in *Harvey*, however, nor is it clear what evidence, if any, was presented in that case to support the officer's testimony regarding the substance of the communication between him and the dispatcher. Consequently, it is unclear whether consideration of any hearsay issue would have changed the outcome of that case. Regardless, because of the Supreme Court's ultimate ruling that "[t]he radio transmission, which confirmed the outstanding warrants, established the necessary probable cause to arrest [the defendant]," id. at 675, we must conclude that the officer's testimony in the instant case was admissible and sufficient to prove that there was probable cause to support Edwards' arrest. As a result, we must reverse the trial court's grant of Edwards' motion to suppress.

*Judgment reversed. Andrews, P. J., and Doyle, J., concur in the judgment only.*

DECIDED NOVEMBER 16, 2010 —
RECONSIDERATION DENIED DECEMBER 2, 2010 — ▮▮▮▮▮▮

*Paul L. Howard, Jr., District Attorney, Stephany J. Luttrell, Assistant District Attorney*, for appellant.
*Bobby E. Hutson, Jr.*, for appellee.

---

*actually existed* at the time he was arrested. Unless and until the State produced the warrant or otherwise proved that the warrant had, in fact, been issued prior to Edwards' arrest, any discussion about whether the warrant had been supported by probable cause at the time it was issued would be irrelevant.