**SECOND DIVISION
ANDREWS, P. J.,
MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**June 10, 2015**

# In the Court of Appeals of Georgia

A15A0620. THE STATE v. LUCAS.

BRANCH, Judge.

The State appeals the trial court's grant of a motion to suppress evidence seized in a search incident to arrest. For the reasons stated below, we reverse.

The record shows that officers stopped Datavious Demon Lucas for speeding, learned that Lucas had an outstanding warrant for his arrest, arrested Lucas, and discovered contraband during the search incident to arrest. Lucas was charged with possession of a controlled substance (Alprazolam), possession of less than an ounce of marijuana, and speeding. Lucas moved to suppress the evidence obtained in the search, the trial court granted the motion, and the State appeals that decision. In the trial court, Lucas did not challenge the validity of the stop or that a search is

authorized incident to an arrest.[1] Rather, he argued that his arrest was illegal because it was based on an invalid arrest warrant, which was allegedly issued for his paternal twin brother Datravious Deon Lucas, and that the State never produced any warrant for the defendant during discovery or at the hearing on the motion to suppress.

When a defendant moves to suppress evidence, "the burden of proving that the search and seizure were lawful shall be on the state." OCGA § 17-5-30 (b). When the appellate courts review a trial court's decision on a motion to suppress evidence, "the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review." *Barrett v. State*, 289 Ga. 197, 200 (1) (709 SE2d 816) (2011) (citation omitted).

Here, in its order granting the motion to suppress, the trial court found the following facts:

On July 3, 2013, City of Lilburn Police Officer Cody Belcher. . . observed Officer Bowles stop a vehicle for speeding inside the city limits of Lilburn; Defendant was the driver. Officer Bowles asked Defendant for his driver's license, but he was unable to produce it. Instead, Defendant gave the officer his name and date of birth. Officer

---

[1] "When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within the person's immediate presence" for certain specified purposes. OCGA § 17-5-1 (a).

Bowles ran the information on [the Georgia Crime Information Center (GCIC)] and learned that Defendant had an outstanding warrant for his arrest. Defendant stated that the warrant was actually for his twin brother. Officer Bowles then called Gwinnett County Probation to verify the information, and a probation officer advised that Defendant had a tattoo of a pit bull on his right shoulder. Upon seeing the confirmatory tattoo on Defendant's shoulder, the officer placed Defendant in handcuffs and told him to stand by the car.

A police unit later arrived with a rapid identification [device], which takes an image of a person's fingerprint and determines whether the person has any outstanding warrants. Upon scanning Defendant's fingers, the test confirmed an outstanding warrant for the name Defendant provided and produced a photograph of Defendant, which matched Defendant's appearance. Consequently, the officers arrested Defendant, and a search incident to his arrest revealed the subject contraband.

The court also noted that the State did not produce an arrest warrant for Lucas either in discovery or in response to the motion to suppress.

Based on these factual findings, the trial court concluded as a matter of law that "the State's failure to produce the arrest warrant during the motion to suppress hearing is a fatal defect." The court therefore concluded that the State had failed to sustain its burden of proving the lawfulness of the arrest that led to the discovery of

3

contraband. The court added that "[t]he fact that the officer may have acted properly at the time of the arrest does not obviate the State's burden of producing sufficient evidence to prove the very existence of the arrest warrant."

1. The State argues that the trial court erred because Lucas's motion to suppress was not timely filed. But the State did not raise this argument below and it therefore is waived. See *Bowden v. State*, 304 Ga. App. 896, 899, n. 1 (698 SE2d 372) (2010) (arguments not raised by the State in the trial court will not be considered for the first time on appeal); *State v. Evans*, 187 Ga. App. 649, 651 (2) (371 SE2d 432) (1988), overruled on other grounds, *State v. Smith*, 268 Ga. 75 (485 SE2d 491) (1997).

2. The State does not contend that the trial court clearly erred regarding the findings of fact. And our review of the testimony at the hearing on the motion to suppress shows that the trial court's findings were not clearly erroneous.

3. The next question is whether the officers were authorized to arrest Lucas and therefore authorized to search him incident to his arrest.

As the trial court noted, no evidence was presented to show that Lucas was arrested pursuant to a warrant; thus, his arrest and subsequent search were not authorized by a valid arrest warrant. *Harvey v. State*, 266 Ga. 671, 672 (469 SE2d 176) (1996) (because bench warrant had been recalled before suspect was arrested,

4

suspect was not lawfully arrested pursuant to the bench warrant itself). "However, the validity of an arrest is not necessarily dependent upon the existence of a valid arrest warrant because if the person detained is outside of his home and probable cause to arrest exists at the time of detention, a warrant is not required." Id. (citation omitted). Our Supreme Court has held that probable cause to arrest arises once an arresting officer learns of the existence of an arrest warrant and that "[w]hether or not the information about the warrant later prove[s] incorrect or invalid is immaterial." *Buchanan v. State*, 259 Ga. App. 272, 274 (576 SE2d 556) (2002), citing *Harvey*, 266 Ga. at 672-673. In *Harvey*, the Supreme Court upheld an arrest even though a bench warrant was no longer valid because prior to the arrest, the officer had learned from a computer check that there was a bench warrant for Harvey and had confirmed through his dispatcher that the warrant was still outstanding and valid. *Harvey*, 266 Ga. at 671. The Supreme Court held that probable cause, which is based on the facts and circumstances known to the arresting officer, included the officer's knowledge that a valid bench warrant had been issued for Harvey's arrest, and that information obtained from the Georgia and National Crime Information Centers was reliable

enough to establish probable cause for arrest.[2] Id. at 673. See also *Buchanan*, 259 Ga. App. at 273 (probable cause to arrest existed where officer arrested Buchanan based on a state computer check that revealed an outstanding warrant for his arrest regardless of whether the warrant later proved to be incorrect or invalid).

Similarly, here, the officers learned from the GCIC that Lucas had an outstanding warrant for his arrest; verified through a probation officer Lucas's identity based on a tattoo; and verified through a fingerprint rapid identification device that Lucas was the subject of the warrant. This information provided a reliable basis for a determination of probable cause to arrest, and the trial court erred by concluding that the failure of the State to produce a valid arrest warrant invalidated the arrest. See, e.g., *State v. Edwards*, 307 Ga. App. 267, 273 (1) (704 SE2d 816) (2010) (physical precedent only) (suppression reversed because dispatcher's statement to officer that there was an outstanding arrest warrant provided the probable cause necessary to arrest).

*Judgment reversed. Andrews, P. J., and Miller, J., concur.*

---

[2] The Supreme Court distinguished *State v. Stringer*, 258 Ga. 605 (372 SE2d 426 (1988), upon which Lucas relies: "The officer in that case obtained no reliable information from the NCIC or any other source that the bench warrant was still valid and, as previously noted, the State stipulated that probable cause for the arrest did not exist." *Harvey*, 266 Ga. at 673-674.