## 44286. GAMBLE v. THE STATE.

(357 SE2d 792)

GREGORY, Justice.

Willie Gamble, Jr., was convicted in Emanuel County on two counts of murder and sentenced to death. Gamble, who is black, was tried by an all-white jury after the prosecutor used his ten peremptory challenges to strike all ten blacks from the venire. On appeal, Gamble contends that the manner in which the prosecutor exercised his peremptory challenges against blacks gave rise to an inference of discrimination — a prima facie case of purposeful discrimination — that was not successfully rebutted by the prosecutor. The principles recently announced by the U. S. Supreme Court in *Batson v. Kentucky,* 476 U. S. ___ (106 SC 1712, 90 LE2d 69) (1986), Gamble contends, require the reversal of his conviction. We agree, and reverse.[1]

1. *Batson* was decided 12 days prior to the start of the jury voir dire in this case, a time too short for its ramifications to be completely analyzed by the trial court. It is applicable, however, to this case. Compare *Griffith v. Kentucky,* 479 U. S. ___ (107 SC 708, 93 LE2d 649) (1987).

2. In the past, challenges of prospective jurors have included challenges for cause, which include challenges for principle cause and for favor, and peremptory challenges. See *Jordan v. State,* 247 Ga. 328 (6) (276 SE2d 224) (1981). Challenges for cause are granted only if sufficient reason can be shown therefor. Peremptory challenges traditionally have required no justification.

However, *Batson* now makes it clear that the use of peremptory challenges is limited by and subject to "the commands of the Equal Protection Clause" of the Federal Constitution. *Batson,* supra, 106 SC at 1718. If the defendant can establish a prima facie case of racial discrimination in the prosecutor's exercise of his peremptory challenges, the prosecutor must explain his exercise of peremptory challenges, and demonstrate that racially neutral criteria prompted the exercise of his peremptory challenges.

The proscription laid down in *Batson* is that a prosecutor may not strike a black juror solely because of his race, nor may he strike

---

[1] The case was tried May 12 through May 16, 1986. On the latter date, Gamble was sentenced to death. A motion for new trial was filed June 12, 1986, and amended on August 8, 1986, and again on October 15, 1986. The motion was denied November 19, 1986. The case was docketed in this court on January 23, 1987. After an extension of time was granted to the parties by this court, the case was orally argued April 6, 1987.

on the basis of an assumption which arises "solely from the jurors' race," nor may he strike "to exclude . . . veniremen from the petit jury on account of their race." Id. at 1723.

A strike exercised under such an assumption will run afoul of the requirements of *Batson* that the action must be "neutral," "legitimate," and "nondiscriminatory," and shown to be such by "clear and reasonably specific" explanations.

It follows that the only limitation newly placed upon the "full peremptory character of the historic challenge" is a requirement of racial neutrality. Id. at 1723. Thus, a prosecutor may strike from mistake, or from ignorance, or from idiosyncracy. But he may not strike from assumptions based solely upon the jurors' race, nor may he use his peremptory strikes "to exclude the veniremen from the petit jury on account of their race."

3. Although, as Justice White has pointed out, "[m]uch litigation will be required to spell out the contours of the Court's Equal Protection holding" *Batson*, supra, 106 SC at 1725 (White, J., concurring) — including what it might take to establish a prima facie case of racial discrimination in the exercise of peremptory challenges — clearly, as the trial court recognized, Gamble made out such a prima facie case. He is black and therefore has standing to raise the issue of discrimination against blacks in the prosecutor's exercise of peremptory challenges. Compare *Pope v. State*, 256 Ga. 195 (7 f) (345 SE2d 831) (1986). And the prosecutor here exercised *all* of his peremptory challenges against *all* of the black prospective jurors on the qualified venire. This overwhelming " 'pattern' of strikes . . . give[s] rise to an inference of discrimination." *Batson*, supra, 106 SC at 1723.

4. A defendant's prima facie showing of discrimination may be rebutted by proof "either that discriminatory purpose was not involved or that such purpose did not have a determinative [discriminatory] effect. [Cits.]" *Duren v. Missouri*, 439 U. S. 357, 368 (fn. 26) (99 SC 664, 58 LE2d 579) (1979).

Here blacks comprised 23.8% of the qualified panel of 42 from which the jury was selected, but none were present on the jury which tried the case. Thus, the absolute disparity between the black percentage of the jury and the black percentage of the panel is 23.8% — more than sufficient to show that the prosecutor's exercise of peremptory challenges "had a discriminatory effect" on the racial composition of the jury. See *Wayte v. United States*, 470 U. S. 598, 608 (105 SC 1524, 84 LE2d 547) (1985).

5. Thus, the only remaining question is whether the prosecutor sufficiently showed "that discriminatory purpose was not involved." *Duren v. Missouri*, supra.

The trial court listened to the state's proffered rebuttal, and, observing that the prosecutor had offered racially neutral reasons for

striking all the black prospective jurors, found that the prima facie case had been successfully rebutted.

The trial court's findings are, of course, entitled to "great deference," *Batson*, supra, 106 SC at 1724 (fn. 21), and will be affirmed unless clearly erroneous.

However, " '[r]ubber stamp' approval of all nonracial explanations, no matter how whimsical or fanciful, would cripple *Batson*'s commitment to 'ensure that no citizen is disqualified from jury service because of his race.' *Batson*, 106 SC at 1723." *State v. Butler*, ___ SW2d ___ (Mo. Ct. App. W. Dist., Case No. WD 38422, decided April 7, 1987).

In order to rebut a prima facie case of racial discrimination in the exercise of peremptories, the prosecutor must explain each peremptory challenge of a black prospective juror. The explanation "need not rise to the level justifying exercise of a challenge for cause," but it must be "neutral," "related to the case to be tried," and a " 'clear and reasonably specific,' explanation of his 'legitimate reasons' for exercising the challenges." *Batson*, supra at 1723, 1724 and 1724 (fn. 20).

The explanation offered for striking each black juror must be evaluated in light of the explanations offered for the prosecutor's other peremptory strikes, and, as well, in light of the strength of the prima facie case. The persuasiveness of a proffered explanation may be magnified or diminished by the persuasiveness of companion explanations, and by the strength of the prima facie case.

A court charged with the duty of determining whether the prosecutor has rebutted a prima facie case may be less troubled by one relatively weak explanation for striking a black juror when all the remaining explanations are persuasive than where several of the prosecutor's proffered justifications are questionable. Similarly, a weak prima facie case may be rebutted more readily than a strong one.

6. In this case, the defendant and most of his witnesses were black. The victims and most of the state's witnesses were white. The prosecutor used *all* of his peremptory strikes to remove *all* of the blacks from the venire. A prima facie case was clearly made. Moreover, in this case, not one, but several of the prosecutor's explanations are suspect under *Batson*.

The prosecutor offered several reasons for striking juror Mason. One was that Mason knew the prosecutor, but the prosecutor did not know Mason. The prosecutor stated that he therefore "assume[d]" that he had been involved in a "child support case" with Mason. However, Mason testified on voir dire only that he knew the prosecutor as "the DA." This testimony does not readily support a reasonable, non-racial inference that the juror knows who the district attorney is because he has been prosecuted in a child support case. As the prosecutor himself conceded to the trial court, such an inference is "a

very vague notion."

Second, the prosecutor claimed that Mason was uncooperative. The prosecutor stated: "He knew me is the only thing *I* got out of his entire business, and after that *we* couldn't get any additional information out of him." (Emphasis supplied.) An examination of the voir dire examination shows, however, that the *state* asked *no* questions of this juror.

The prosecutor also raised a question about Mason's military service, noting that he had served six years in the Army, and stating, "Army ups are usually four and from my experience people don't come out of the service in six unless for some reason they're put out of the service." After making this observation, however, the prosecutor stated: "That's something I don't know. I'm not trying to impute anything sinister to Mr. Mason."

The prosecutor did not ask Mr. Mason any questions about his military service, and what is in the record does not support any "sinister" conclusions about it.

Finally, the prosecutor stated "the main factor is that he is the same age, he looks a little like the defendant . . ." The defendant points out that most of the members of the jury were about the same age as the defendant. If that is so, and the state does not deny it, this reason for striking Mason applies equally to white jurors who were accepted by the state, and thus supports, rather than rebuts, the prima facie case.

The state offered three reasons for striking juror Mosely: (1) "[H]e appears to have the intelligence of a fencepost," (2) He is a Mason; and (3) "He belongs to St. James Baptist Church which is located very nearby the home of the defendant. I am familiar with the pastor of the St. James Baptist Church whose name has not been mentioned in this Courtroom, but I know him, I know him well, he's a friend of mine, and I know pretty much his views in this matter. I don't know whether Mr. Mosely has talked to the preacher or not, but I know pretty much where the preacher stands and that was of concern to us as well."

As evidence of the juror's low intelligence, the prosecutor observed, "When he was asked what he had done during his life or what his employment had been, [he answered,] 'I don't do anything' . . ." In fact, the question was not what his occupation had been, but what it is, and Mosely is retired. It is not obvious from the voir dire examination of this juror that his intelligence was extremely low. Moreover, one white juror was illiterate, and another admitted to being "a little slow."

The prosecutor's explanation that Mosely is a Mason is unpersuasive. It is not clear how Masonic membership is related to this case. Moreover, the prosecutor did not mention the Masonic member-

ship of one of the black prospective jurors when explaining his strikes and another black juror apparently was struck because he was a *brick* mason.

Finally, the prosecutor did not enlighten the trial court as to the views of the pastor at Mosely's church, nor does anything in the record show that Mosely had ever been exposed to those views.

The prosecutor explained that prospective juror McGruder was peremptorily challenged because (1) she answered affirmatively a question whether a member of her family or a close friend had ever had a problem "with abuse of alcohol or drugs," and (2) the district attorney had prosecuted a black man named McGruder for murder "two or three years ago," out of the "Wadley-Crossing Green area."

Several white jurors also testified that close friends or family had experienced drug or alcohol problems. The prosecutor failed to explore on voir dire whether juror McGruder was related to the McGruder he had prosecuted for murder.

The prosecutor asked no questions of juror Davis on voir dire. He explained to the trial court that "we couldn't find a lot that we thought that he did anything wrong . . . . So we started trying to look for what he did say . . . and we couldn't find a lot . . . ." The prosecutor went on to say, however, that he had observed the juror that morning "pull in at a known drug distribution center . . . [a] Dixie [gas] station . . . I saw Mr. Davis pull in, I pulled off the side of the road, saw him stay there briefly and leave . . . I saw Mr. Davis come out and I watched his demeanor today. He looked a little slow. Now you can take that only with a grain of salt. Yesterday he didn't strike me as a very intelligent person, but today I was concerned about the possibility of him being under some sort of drug intoxication, and certainly associating with people who have a great deal against me and in the kind of business we're involved in."

Any prima facie case, including one as strong as the one established in this case, may be rebutted successfully, given a sufficiently strong explanation for the prosecutor's exercise of peremptory challenges. However, the explanation given in this case, considered in its entirety, fails to overcome the prima facie case.[2]

Several of the proffered explanations were suspect. In some in-

---

[2] The prosecutor's justification for peremptorily challenging two of the black prospective jurors clearly satisfies the *Batson* standard. He had been involved in the prosecution of a long, drawn-out and still ongoing child support case involving one of the two jurors, and a brother of the other prospective juror had been prosecuted in federal court on serious drug charges, with the investigatory assistance of this prosecutor's office. The defendant does not even argue that these two peremptories were not justifiable on valid, non-racial grounds, and we find that the prosecutor could reasonably have inferred from the circumstances that these two prospective jurors were biased against him, notwithstanding their protestations of impartiality.

stances, similarly situated white jurors were not challenged. Other reasons were not related to the case on trial. Some jurors were excluded on questionable premises. The prosecutor's voir dire examination of many of the black jurors was minimal; some were asked no questions. In these circumstances, the trial court's finding that the prosecutor successfully rebutted the prima facie *Batson* case is clearly erroneous.

7. We reiterate that a prosecutor must demonstrate the racial neutrality of his peremptory challenges only if the defendant establishes a prima facie case of racial discrimination in the prosecutor's exercise of peremptory challenges. Here, the circumstances established, prima facie, a racially discriminatory purpose and a racially discriminatory impact. The prosecutor failed to rebut this prima facie case. We must therefore reverse. Because the evidence meets the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) the case may be retried before a properly selected jury.

*Judgment reversed. All the Justices concur.*

DECIDED JULY 9, 1987 —
RECONSIDERATION DENIED JULY 30, 1987.

*Sarah M. Tipton-Downie, Alan P. Layne, Clive Stafford-Smith,* for appellant.

*Richard A. Malone, District Attorney, William H. McClain, Assistant District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General,* for appellee.