## S92P0547. FORD v. THE STATE.
(423 SE2d 245)

FLETCHER, Justice.

Ford was convicted of murder and sentenced to death in Coweta County. His conviction and sentence were affirmed in *Ford v. State*, 255 Ga. 81 (335 SE2d 567) (1985). While Ford's certiorari petition was pending in the U. S. Supreme Court, that Court issued its decisions in *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), concerning racial discrimination in the exercise of peremptory challenges, and in *Griffith v. Kentucky*, 479 U. S. 314 (107 SC 708, 93 LE2d 649) (1987), which held that *Batson* would apply retroactively to all cases still pending on direct review when *Batson* was decided.

The U. S. Supreme Court remanded Ford's case to this court for reconsideration in light of *Batson* and *Griffith v. Kentucky*, supra. With two justices dissenting, this court held that Ford's *Batson* claim was procedurally barred. *Ford v. State*, 257 Ga. 661 (362 SE2d 764) (1987). The two dissenters argued that we could not avoid addressing the *Batson* issue on its merits by relying on a novel procedural bar that did not exist at the time of trial. Id. at pp. 664-665. The U. S. Supreme Court, agreeing unanimously with the dissenting justices of this court, reversed and remanded for consideration of the *Batson* issue on its merits. *Ford v. Georgia*, 498 U. S. 411 (111 SC 850, 112

LE2d 935) (1991).

The case was then remanded by this court to the trial court for a hearing on the *Batson* issue. The trial court listened to the reasons offered by the original trial prosecutor to explain his peremptory challenges and concluded they were sufficient to rebut any prima facie inference of racial discrimination in the prosecutor's exercise of peremptory challenges. We disagree, and reverse.

1. The qualified venire in this case consisted of 10 blacks and 32 whites. The prosecutor peremptorily struck nine blacks and one white. In other words, he exercised 90 percent of his strikes to strike 90 percent of the blacks from the venire, while exercising 10 percent of his strikes to exclude a mere 3 percent of the whites on the venire. As the defendant contends, "it does not require a statistician . . . to recognize" the very high probability that this racial disparity did not occur strictly as a matter of chance. As in *Gamble v. State*, 257 Ga. 325, 326 (357 SE2d 792) (1987) (quoting from *Batson*), this "overwhelming" "pattern" of strikes establishes a prima facie inference of racial discrimination.

2. A prima facie case of racial discrimination having been established, the burden was on the prosecutor to prove that the disproportionate exclusion of black jurors was not the result of the prosecutor's conscious or unconscious animus against black jurors but was instead mere happenstance.

As was true prior to *Batson*, the prosecutor may strike "from mistake, or from ignorance, or from idiosyncracy." *Gamble*, supra at 326. He may strike for all sorts of consequential or inconsequential reasons *except* that he may not strike on the basis of race.

Where the result of his peremptory strikes is the grossly disproportionate exclusion of jurors of one race, there is greater likelihood that race was the underlying determining factor and the real explanation for the result. At this point, "mistake," or "ignorance," or "idiosyncracy" do little to dispel the inference that racial bias infected the prosecutor's exercise of peremptory strikes.

Hence, it is not a sufficient rebuttal simply to offer explanations which do no more than fail to prove the defendant's claim that the prosecutor acted, consciously or unconsciously, in a racially-discriminatory manner. That he so acted may be inferred by the circumstances establishing the prima facie case. The prosecutor's explanations must be strong enough to *overcome* the prima facie case.

3. Here, as in *Gamble v. State*, supra, many of the explanations offered by the prosecutor could have applied with equal force to white jurors whom the prosecutor declined to strike.[1] Other explanations

---

[1] One juror was struck because her husband was a minister and the prosecutor claimed

were suspect. (The defendant calls them "fanciful.") For example, one juror was excused because her job was "mak[ing]" videotapes. The prosecutor explained that "people who are absorbed with videotapes or visual images lose a certain sensitivity of human beings, human suffering and human feelings." However, as the defendant contends, it is not at all clear that the juror was involved with "visual images" rather than the mere mechanical assembly of the components of the videotape, and yet the prosecutor asked the juror no questions to clarify what she meant by "making" videotapes, much less question her about her feelings or attitudes or whether she was more "absorbed" with visual images than other jurors who merely have watched too much television.

A prosecutor carries an especially heavy burden when attempting to rebut a prima facie case as strong as the one in this case. *Gamble v. State*, supra at 327. The explanations offered in this case simply are not the kind of concrete, tangible, race-neutral and neutrally-applied reasons that can overcome the strong prima facie case established by the pattern of strikes and other factors in this case.[2]

4. When the racial makeup of the group excluded by the prosecutor closely parallels the racial makeup of the venire, the laws of probability may tend to support the prosecutor's claim that none of the jurors were excluded because of their race, and virtually any neutral explanation by the prosecutor will be sufficient to support a finding that race was not a factor in his exercise of peremptory challenges. However, as the actual result deviates farther and farther from the statistically expected result, it is increasingly likely that race bias — intentional or not — is the real reason for the disparity and greater scrutiny must be given to the proffered explanations to ensure that we honor *Batson's* command to eliminate racial discrimination from

---

he struck ministers and their families because they tend to be "more forgiving" than the law requires. However, the prosecutor declined to strike a white juror who was a minister.

Another black juror was struck because she worked in Fulton County, supposedly an anti-death-penalty environment. Yet white jurors working in Fulton County were not excused.

Still another was struck because he testified initially that he would automatically vote *for* a death sentence. A white juror who testified similarly was accepted by the state.

The state argues that the prosecutor was not required to explain why he did not strike whites and that "speculation can go both ways." It is true that the prosecutor may explain as much or as little as he pleases. Whether what he offers is sufficient to overcome a prima facie case is another matter. A prosecutor's failure to explain the apparently disparate treatment of similarly situated white and black jurors certainly diminishes the force of his explanation for striking a black juror.

[2] Aside from the pattern of strikes against blacks, we note that the victim was white while the defendant was black, that the excluded black jurors had little in common save their race, and that the prosecutor failed meaningfully to question these jurors to elicit answers that might support his suspicions or provide some objective basis for excusal rather than mere speculation.

the exercise of peremptory challenges.

In this case, of the 42 persons on the panel from which the trial jury was chosen, 10 or 24 percent, were black. Instead of striking two or three blacks, the prosecutor struck nine. His explanations fall short of proving that this disparity was the incidental result of neutral selection procedures — i.e., that factors other than race explain why so many blacks were excluded from the jury. The trial court's finding to the contrary cannot be upheld.

*Judgment reversed. All the Justices concur, except Bell, P. J., and Hunt, J., who concur in the judgment only.*

DECIDED DECEMBER 1, 1992.

*Bryan A. Stevenson, Stephen B. Bright, Barry J. Fisher, Charles Ogletree,* for appellant.

*Peter J. Skandalakis, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paula K. Smith, Assistant Attorney General,* for appellee.