## A97A0412. GARDNER v. THE STATE.
(483 SE2d 912)

ELDRIDGE, Judge.

Appellant Tadaris Gardner appeals a Decatur County jury's verdict finding him guilty of the July 18, 1995 armed robbery of a McDonald's Restaurant in Bainbridge, Georgia. Appellant's sole enumeration of error is a challenge to the trial court's determination that, pursuant to *Georgia v. McCollum*, 505 U. S. 42, 59 (112 SC 2348, 120 LE2d 33) (1992), appellant's use of his peremptory strikes was racially motivated. *Held*:

In a two-pronged argument, appellant contends that the trial court erred in rejecting his race-neutral explanations for striking jurors 40, 41, 54, and 61. Appellant contends that: (a) explanations which are race-neutral on their face must be accepted by the trial court in accordance with the Supreme Court of Georgia's decision in *Jackson v. State*, 265 Ga. 897 (463 SE2d 699) (1995); and (b) after the appellant articulated race-neutral reasons for the use of his strikes, the state failed to prove that such strikes were, in fact, racially motivated pursuant to *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 131 LE2d 834) (1995). We address each assertion in turn:

First, appellant asserts that the Supreme Court of Georgia's decision in *Jackson*, supra, holds that unless discriminatory intent is inherent in the explanation, the trial court is required as a matter of law to accept the explanation, thereby concluding the inquiry. However, *Jackson*, supra, does not so hold. In *Jackson*, supra, is the explicit acknowledgment of the three-step analysis of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), ("*Batson*"), and by extension, the principles of *Georgia v. McCollum*, supra ("*McCollum*"). Accordingly, after a prima facie case is made demonstrating the discriminatory use of strikes,[1] and explanations are given, the trial court determines whether the explanations, even if facially race-neutral, are in fact motivated by discriminatory intent.[2] *Jackson*, supra at 899. This clear recognition of the trial court's role in ascertaining the presence of discrimination in otherwise race-neutral[3]

---

[1] No challenge is made herein to the *Batson/McCollum* step one prima facie showing made by the state and accepted by the trial court.

[2] The trial court in the instant case heard explanation for *all* of the contested strikes, as well as any additional evidence the parties wished to put forward, before rendering a decision regarding the presence of a discriminatory motivation. This is the correct method by which such inquiry should be conducted in order to employ the "totality of the circumstances" analysis which should accompany such determination. *Batson*, supra at 94; *Whatley v. State*, 266 Ga. 568, 570 (468 SE2d 751) (1996); *Crawford v. State*, 220 Ga. App. 786, 788 (470 SE2d 323) (1996); *Bess v. State*, 187 Ga. App. 185 (369 SE2d 784) (1988).

[3] Although a challenge under *Batson* or *McCollum* may be raised for the improper use of strikes based on gender, as well as race, our analysis will concern only race based strikes and will reference only race. See *J. E. B. v. Alabama*, 511 U. S. 127 (114 SC 1419, 128 LE2d

explanations has been reiterated by the Supreme Court of this state time and again. "A trial court may also determine that improper discriminatory motive underlay the exercise of a peremptory challenge when the race-neutral explanation proffered by the strikes' proponent is so implausible or fantastic that it renders the explanation pretextual." *Turner v. State*, 267 Ga. 149 (476 SE2d 252) (1996); *State v. Adams*, 470 SE2d 366, 372 (S.C. 1996); see also *Gamble v. State*, 257 Ga. 325 (5) (357 SE2d 792) (1987).

Further, the importance of the trial court's role in identifying discrimination in explanations which may, on the surface, appear legitimate cannot be overstated: "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the [striker's] state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" (Citations omitted.) *Hernandez v. New York*, 500 U. S. 352, 365 (111 SC 1859, 114 LE2d 395) (1991); *Smith v. State*, 264 Ga. 449, 454 (448 SE2d 179) (1994); *Moak v. State*, 222 Ga. App. 36 (473 SE2d 576) (1996); *Hightower v. State*, 220 Ga. App. 165, 166 (469 SE2d 295) (1996).

Contrary to appellant's assertions, *Jackson*, supra, re-affirms the trial court's role in the detection of discrimination and does not mandate a rubber stamping of any explanation given as long as it is facially race-neutral: step three of the inquiry is the trial court's determination as to whether it has been proven that "Jackson's explanation was motivated by discriminatory intent." *Jackson*, supra at 899. Moreover, this position has recently been reiterated by the Supreme Court of Georgia in *Greene v. State*, 266 Ga. 439, 443 (469 SE2d 129) (1996): "[O]nce a race-neutral explanation has been tendered, the trial court must then decide whether purposeful racial discrimination has been proven." Accordingly, the trial court did not err in refusing to simply accept appellant's facially race-neutral explanations and in performing its duty to determine whether appellant's use of his peremptory strikes was racially motivated.

Next, appellant contends that, under *Purkett v. Elem*, supra, explanations for strikes do not have to be "plausible" or "persuasive" as long as they are race-neutral on their face; appellant contends that he provided the trial court with race-neutral explanations for the use of his strikes, and that the state, thereafter, failed to prove that appellant's strikes were, in fact, racially motivated. See *Jackson*,

supra at 899.[4] However, appellant's enumeration of error is framed incorrectly; by granting the *McCollum* motion and seating the jurors who had previously been struck, the trial court implicitly determined that the opponent of the strike, the state, had met its burden of showing discriminatory intent. *Greene*, supra at 443; *Herrin v. State*, 221 Ga. App. 356, 358 (471 SE2d 297) (1996). Once the explanation for the strikes has been proffered, "the inquiry [is] properly framed for the trial court's determination." *Greene*, supra at 443.

This determination can be based on numerous factors, such as the trial court's disbelief of the explanations, together with elements of the prima facie case; the trial court's knowledge of the community in relation to the explanations offered; or the trial court's knowledge of the one utilizing the strike in relation to the explanations offered. *St. Mary's Honor Center v. Hicks*, 509 U. S. 502 (113 SC 2742, 125 LE2d 407) (1993); *Hernandez*, supra at 365-366; *Hairston v. Gainesville Sun Publishing Co.*, 9 F3d 913, 914 (11th Cir. 1993). Thus, while additional argument to the trial court may (or may not) aid the opponent of the strike's persuasive burden, the opponent is not required to introduce evidence beyond that already offered to establish the prima facie case. See *Purkett v. Elem*, supra 131 LE2d at 838 (following the prima facie showing and subsequent reasons for exercising strikes, the trial court, without explanation, overruled the *Batson* challenge); *St. Mary's Honor Center*, supra, 125 LE2d at 418 (factfinder's disbelief of reasons put forward by defendant, together with elements of prima facie case, suffice to show intentional discrimination); *Batson*, supra at 85 (once prima facie showing is made, the trial court undertakes inquiry into such evidence of intent to discriminate as may be available); *Hairston*, supra at 914 (prima facie case sufficient to establish pretext). In the absence of further argument from the opponent of the strike, the trial court decides whether the proffered explanations are "strong enough to overcome the . . . prima facie case." *Lingo v. State*, 263 Ga. 664, 665 (437 SE2d 463) (1993); *Ford v. State*, 262 Ga. 558, 559 (423 SE2d 245) (1992).

Therefore, appellant's inquiry, posited properly in a *McCollum* challenge, should be whether, under *Purkett v. Elem*, supra, the trial court erred in determining that intentional discrimination existed. And, that way madness lies.

---

[4] While the Supreme Court of Georgia in *Jackson*, supra, discussed *Purkett v. Elem*, supra, such discussion was dicta. *Jackson*, supra involved a challenge under *McCollum*. Under the facts in *Jackson*, supra, the trial court disallowed the defense strike of a bail bondsman's wife when defendant Jackson had, in fact, jumped bail and such evidence was likely to come out at trial. The Supreme Court determined that this reason for the use of the defense strike was clearly case-related and specific and that the trial court's determination was, thus, "clearly erroneous" pursuant to Georgia law as it has stood long before the 1995 decision in *Purkett v. Elem*, supra. *Jackson*, supra at 900, citing *Gamble*, supra.

For *Batson* and *McCollum* appellate review has been tangled together. This is so primarily because both deal with intentional discrimination in the use of peremptory strikes and because the three step framework of a *Batson* analysis is used when deciding a *McCollum* claim at the trial court level. However, claims under *Batson* and *McCollum*, upon reaching the appellate level, are in a very different posture. While a trial court's findings are entitled to "great deference" and will be reversed only if "clearly erroneous" under both *Batson* and *McCollum*,[5] there is a world of analytic difference in an appellate review of a finding that something does *not* exist, and an appellate review of a finding that something *does* exist. The perspective of a deferential appellate review of a *McCollum* claim is not the same as the perspective of a deferential appellate review of a *Batson* claim, and thus the expression and application of such deference in deciding a *Batson* case on appeal does not always provide a comparable expression of deference when applied to a *McCollum* case on appeal.

Under our current rules of criminal procedure, a *Batson* or *McCollum* challenge that reaches the appellate level is, necessarily, brought by a criminal defendant who has lost the battle over peremptory strikes in the trial court. Accordingly, in framing the issues, (1) a *Batson* claim will always entail a deferential review of the trial court's finding that racial discrimination was *not* present, because the trial court denied the defense motion on that basis and permitted the prosecutor's strikes; and (2) a claim under *McCollum* will always entail a deferential review of the trial court's finding that racial discrimination *was* present, because the trial court disallowed the defense strikes and granted the prosecution motion on that basis. Thus, the focus of the review is, obviously, entirely different. Nonetheless, appellate courts have attempted to apply *Batson* appellate rationale to *McCollum* appellate analysis without understanding, or at the very least acknowledging, the completely different perspectives of such reviews. Which leads us to *Purkett v. Elem*, supra (*"Purkett"*), a case involving a *Batson* challenge on appellate review, and the application thereof to appellate analysis under *McCollum*, specifically, and to *Batson/McCollum* appellate jurisprudence as a whole.

"The precise formula used for *review* of factfindings, of course, depends on the context." (Emphasis supplied.) *Hernandez*, supra at 365. Thus, in reaching an understanding of the *Purkett* opinion, one salient contextual point must be understood: *Purkett* was not addressed to the trial court at all. Nothing about the decision was

---

[5] *Batson*, supra at 98, n. 21; *Gamble*, supra at 327.

directory in any way toward the trial court regarding which explanations that body should deem plausible or persuasive, and *Purkett* in no way expressed the views of the United States Supreme Court regarding what explanations a trial court should consider acceptable in a *Batson/McCollum* challenge.[6] *Purkett* was directed solely at procedural aspects of *appellate* analysis under *Batson/McCollum*, and it was in the context of a *Batson* appellate review that the decision in *Purkett* was written.

In *Purkett*, the Eighth Circuit Court of Appeals had reversed a trial court's *Batson* step three credibility decision that race was *not* a factor in the prosecution's use of a challenged strike; the Eighth Circuit had decided that racial motivation *was* present in the prosecutor's exercise of the strike, because the prosecutor's explanation for the strike was implausible — to the Eighth Circuit.[7] However, in affording "great deference" on appellate review to a trial court's finding, under *Batson*, that racial discrimination did *not* exist, the United States Supreme Court directed the Eighth Circuit Court of Appeals to recognize that a nonracial "unpersuasive" or "implausible" explanation, one that was *accepted* by the trial court, cannot serve as a basis for reversal; the Supreme Court directed the appellate court not to substitute its factual finding that a racial motivation did exist, for the trial court's finding that *no* racial motivation existed, merely because the appellate court found the race-neutral explanation unpersuasive: "Here the Court of Appeals did not conclude or even attempt to conclude that the state court's finding of *no* racial motive was not fairly supported by the record. . . . It gave no proper basis for overturning the state court's finding of no racial motive, a finding which turned primarily on [the trial court's] assessment of credibility." (Emphasis supplied.) *Purkett*, supra, 131 LE2d at 840.

Thus, under *Purkett*, the ultimate *Batson* appellate inquiry concerns only whether the trial court's credibility determination that racial motivation did *not* exist was clearly in error. Accordingly, a race-neutral, albeit implausible, explanation which is believed by the trial court, must be accepted by the appellate court, regardless of the implausibility. The locus of appellate review is the trial court's credibility determination as to the believability of the explanations, not the appellate court's perception regarding the believability of the

---

[6] To this end, it must be understood that the *Purkett* decision remanded the case to the Eighth Circuit, which court could still determine that the trial court was incorrect, as long as the appellate court did so from the proper perspective, i.e., from a review of the credibility determination of the trial court, not a de novo evaluation of the explanations, themselves. *Purkett*, supra, 131 LE2d at 840.

[7] The prosecutor exercised a strike to remove a black male because he had long curly hair, a moustache, and a goatee, which combination the prosecutor found to be "suspicious." *Purkett*, supra, 131 LE2d at 838.

explanations.

From this context of a deferential review of the trial court's *Batson* determination comes the language of *Purkett* cited by appellant in support of his claim that nonracial explanations, alone, are sufficient: "The second step of this process does not demand an explanation that is persuasive, or even plausible. . . . What it means by a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection."[8] *Purkett*, supra, 131 LE2d at 839-840. However, contrary to appellant's assertions, this specific language of *Purkett* cannot apply in the framework of a deferential *McCollum* appellate review, such as in the case sub judice, wherein the trial court does *not* believe the proffered explanations and has determined that racial discrimination *is* present.

In *Purkett*, this specific language was directed to the appellate court on a deferential *Batson* review because the race-neutral aspect of the explanation, regardless of its persuasiveness, provided *support* for the trial court's credibility decision that no racial motive existed for the use of the strike, and thus provided "no proper basis" for reversal. *Purkett*, supra at 840. However, this language of *Purkett* cannot apply to a *McCollum* appellate review; not only does this language not provide support for the trial court's credibility determination, the facially race-neutral aspect of an explanation under *McCollum* is *irrelevant*, since the trial court determined a racial motivation existed *despite* the nonracial aspect of the excuse. Under *McCollum*, the trial court's credibility determination (the only reviewable issue under *Purkett*) was obviously based on factors other than the race-neutral aspect of the explanations.

Moreover, *Purkett*'s absolute focus on deference to a trial court's findings as *correct* is diametrically opposed to the application of this specific language to a *McCollum* challenge; the selective misapplication of this specific language from *Purkett* to facially race-neutral excuses under a *McCollum* appellate review would assure that the trial court's finding that a racial motivation existed would be *incorrect*.

Therefore, while the unequivocal message of *Purkett*, i.e., deference to the trial court's determinations, applies equally to a claim under either *Batson* or *McCollum*, the standpoint from which such deference is expressed and applied, as illustrated by the cited language in *Purkett*, must be case specific. The language of *Purkett*, a *Batson* review, cannot be pulled from the opinion at random and

---

[8] Ironically, appellate courts have utilized this language of *Purkett* in order to dictate to the trial courts the types of explanations that should be acceptable; this language was actually an admonition to the appellate courts to stop substituting their opinions for the trial courts' judgments concerning which explanations are acceptable.

applied to a *McCollum* review such as the case sub judice, and we decline appellant's invitation to do so. In the law, all roads do not lead to the same destination.

Clearly, then, the specific language of *Purkett* must be read in context in order to foster an understanding of the *Purkett* decision itself, as well as its impact upon *Batson/McCollum* appellate review.

Perhaps most importantly to an understanding of the *Purkett* decision and how it applies to *Batson/McCollum* jurisprudence as a whole is the notion that, at some point, common sense must prevail. *Purkett*, when taken out of the context of the purpose for the opinion and misapplied as a directive to the trial court, rather than the appellate courts, seems to mandate that, as long as the reason for the strike is race-neutral on its face, the trial court will be unauthorized to find the presence of racial discrimination. Recognizing that few attorneys would actually state an obvious racial reason for the exercise of a peremptory strike, the language of *Purkett* would seem, as appellant suggests herein, to preclude altogether a finding of racial discrimination in the use of strikes. Yet, in *Batson*, the United States Supreme Court held that "If . . . general assertions were accepted as rebutting a . . . prima facie case, the Equal Protection Clause 'would be but a vain and illusory requirement.' [Cit.]" *Batson*, supra at 98. Common sense dictates that this same court could not and would not literally overrule a decade of *Batson*-generated law in a per curiam opinion, *Purkett*, without benefit of argument or full briefs on the merits, and without specifically saying so. See *Parker v. State*, 219 Ga. App. 361, 364 (464 SE2d 910) (1995) (Pope, P. J., concurring specially). Moreover, *Purkett* liberally cites *Batson* throughout. No. Lucidly, we must come to the conclusion that *Purkett* had another purpose from that urged by appellant; a purpose revealed to appellate courts only through a dispassionate and frank reading of *Purkett*.

Some members of the appellate courts may decry the inability to assess a trial court's *Batson/McCollum* credibility decisions based on a review of the explanations for the strikes, themselves. Nonetheless, it is the prevention of this appellate practice that is the heart of *Purkett*, as well as the essence of the *Purkett* dissent: "I would favor a rule giving the appeals court discretion, based on the sufficiency of the record, to evaluate a prosecutor's explanation of his strikes." *Purkett*, supra, 131 LE2d at 840, 844 (Justice Stevens, dissenting). *Purkett*, quite simply, applies the brakes to appellate review that, while giving lip service to the "great deference" to be afforded the trial court's decisions, routinely reverses those courts on the basis of a de novo review of the explanations proffered; this, without taking into account that the trial court's factual, credibility determinations concerning the use of the strikes may consist of a multitude of factors

apart from the explanations offered. See *Hernandez*, supra at 364-365; *Batson*, supra at 98; *St. Mary's Honor Center*, supra at 418-424; *Hairston*, supra at 920-921.

The extent of the restrictive impact of *Purkett* on appellate review under *Batson* and *McCollum* is illustrated nowhere as clearly as in *Purkett*'s directive to the Eighth Circuit Court of Appeals that even those standby *Batson* appellate analytical considerations, "case related" and "reasonably specific," were never meant to be tools for an *appellate* evaluation of the nonracial explanations offered by the proponent of the strike, but were a "warning" for the trial court in those instances where *no* explanation is offered at all: "The Court of Appeals appears to have seized on our admonition in *Batson* that to rebut a prima facie case, the proponent of a strike 'must give a "clear and reasonably specific" explanation of his "legitimate reasons" for exercising the challenges,' [cits.], and that the reason must be 'related to the particular case to be tried,' [cit.]. This warning was meant to refute the notion that a prosecutor could satisfy his burden of production by merely denying that he had a discriminatory motive or by merely affirming his good faith." *Purkett*, supra, 131 LE2d at 839-840; see also *Batson*, supra at 98.

As difficult as it may be for some appellate courts to accept, in *Purkett*, the United States Supreme Court limits the power of appellate review under *Batson* and *McCollum* and returns the authority to definitively decide these issues to the trial courts. Thus, the Court in *Purkett* repeatedly cites *Hernandez*, supra, which stands for the principle that the believability of the explanations offered by the one exercising the strikes will be based primarily on demeanor and credibility, which determination "lies 'peculiarly within a trial judge's province.'" *Hernandez*, supra at 365; *Purkett*, supra, 131 LE2d at 839-840 (trial court's findings turn primarily on an assessment of credibility).

This is not an idle concept. For an appellate court can never be privy to what is actually occurring "in the trenches," and the factors that make up a trial court's credibility determination under *Batson/McCollum* will often go beyond the mere words that accompany the record before the appellate courts. Only those unfamiliar with the realities of trial work would believe that a cold reading of a *Batson/McCollum* transcript provides a sufficient basis for the appellate courts to assess the credibility of the proffered explanations, thereby supplanting the trial court's credibility decision with an appellate judgment. Such a view gives far too little credit to the trial courts, and idealizes the abilities of the appellate courts. In matters of credibility, we do not "know better."

That factors beyond the ken of the appellate courts exist in making these credibility determinations is fortuitously illustrated in the

case sub judice in which the following exchange occurred after the defense raised a "tit for tat" *Batson* challenge following the *McCollum* discussion;[9] the reason given by the prosecutor for the use of a strike against an older black male was the man's long history of employment by the defense attorney's family, to which explanation the defense attorney replied: "[Defense:] Your Honor, as to that juror I can simply say that he's never been employed by me or my father, but he has been employed by an uncle of mine. [Court:] Did he nearly about raise you, Mr. Kirbo? [Defense:] I've worked with him, Your Honor. [Court:] From infancy? [Defense:] Seven years old. [Court:] Anything further . . .?" Clearly, the trial court had a unique perspective upon which to base a credibility determination as to the use of strikes or the persuasiveness of counterarguments thereto, i.e., familiarity with the parties involved. This is a legitimate factor in determining credibility and one which the appellate courts, normally, cannot share.[10]

Thus, after a thorough analysis, we understand what *Purkett* did *not* do: it did not provide instruction to the trial courts as to what explanations are to be believed under *Batson* or *McCollum*, and it did not require the trial court to accept any reason proffered as long as it is race-neutral on its face. Because *Purkett* was directed at an appellate court's unwillingness to defer to a trial court's conclusions, it is clear that *Purkett* in no way impacts upon a trial court's duty under *Batson* or *McCollum* to determine the credibility of the explanations

---

[9] The prosecutor provided explanations for his strikes, pretermitting the fact that a prima facie case of discrimination under *Batson* had not been made.

[10] A trial court need not ignore the development of a pattern in the use of strikes, or explanations given for strikes, by an attorney who has appeared before the court on numerous occasions. *Hernandez*, supra at 365. *Batson* did not overrule *Swain v. Alabama*, 380 U. S. 202 (85 SC 824, 13 LE2d 759) (1965) and its review of the "systematic use of peremptory challenges . . . over a period of time." *Swain*, supra at 227. Instead, *Batson* served to loosen the evidentiary burden and extend the historical perspective of *Swain*, so that a prima facie case of discrimination may be raised upon factors present in a single case. Thus, a rebuttable inference of discriminatory intent may be raised from conduct and statistical data. *Batson*, supra at 93-95. In fact, principles of equal protection, as well as the trial court's unique opportunity to observe circumstances under which an attorney is responsible for utilizing strikes in a particular pattern beyond the facts of a single case, must impact on the credibility determination under step three. Id. at 92, 96-97. A court's proceedings do not occur in a vacuum, and the principles of precedence acknowledge that each cause of action does not begin de novo. An inference of purposeful discrimination could be raised when an attorney " 'in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of [a suspect class].' " (Citation omitted.) Id. at 91-92. "[T]he trial court must undertake a 'factual inquiry' that 'takes into account all possible explanatory factors' in the particular case. [Cit.]" Id. at 95. Such as in the case sub judice, these credibility determinations occur only in the trial court's step three analysis regarding the credibility of the explanations for the strikes and may form one of the bases for the trial court's ultimate determination as to "whether counsel's race-neutral explanation for a peremptory challenge should be believed." *Hernandez*, supra at 365.

for the use of peremptory strikes based upon the many factors that may enter into such decision. *Hernandez*, supra at 364-365; *Batson*, supra at 98; *St. Mary's Honor Center*, supra at 418-424; and *Hairston*, supra at 920-921.

Further after a candid, straightforward reading, we know what *Purkett did* do: *Purkett* insists that the appellate courts defer to the trial court's findings under *Batson* or *McCollum* by evaluating, not the nonracial justifications, themselves, but the trial court's credibility determination as to the believability of the justifications. "For its [Eighth Circuit] whole focus was upon the *reasonableness* of the asserted nonracial motive . . . rather than the *genuineness* [credibility] of the motive." (Emphasis in original.) *Purkett*, supra, 131 LE2d at 840.

In sum, and contrary to the assertions of some, *Purkett* did not "do away" with either *Batson* or *McCollum*. The detection of purposeful racial discrimination in the use of peremptory strikes is as important and valid a duty as it ever was. *Purkett* simply returned that duty and the authority to make these credibility determinations to the appropriate deciding body, the trial court.

This is not a novel approach. Under *Batson*, the trial court was always supposed to be the appropriate decision-making body with regard to *Batson/McCollum* challenges. "The trial court then will have the duty to determine if the defendant has established purposeful discrimination." (Footnote omitted.) *Batson*, supra at 98. "Nor do we think . . . trial judges will not perform [their duty] under the Constitution." Id. at 99, n. 22. " '[A] finding of intentional discrimination is a finding of fact.' . . . [T]he trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, [and] a reviewing court ordinarily should give those findings great deference." (Citations omitted.) Id. at 98, n. 21. Thus, not unlike an analysis under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), an appellate court should not review a factual credibility finding from any perspective other than a demonstration by proof, affirmatively appearing in the record, that the finder of fact's credibility determination was clearly in error. "A [reviewing] court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts." *Jackson v. Virginia*, supra at 326. " '[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' [Cit.]" *Hernandez*, supra at 369.

Accordingly, we turn now to the case sub judice and a deferential review of the trial court's step three credibility decision under *McCollum* that appellant's nonracial explanations were insufficient to

rebut the prima facie case which demonstrated that the exercise of appellant's strikes was racially motivated as to jurors 40, 41, 54, and 61.

In the case sub judice, appellant used all ten peremptory strikes to remove white jurors, rendering the composition of the jury as twelve black jurors. The trial court found that a prima facie showing had been made so as to require appellant to explain the exercise of his strikes. By way of explanation, appellant asserted that he exercised a strike against juror 40 because the juror was very conservative in nature; a strike was exercised against juror 41 because she was an elderly white lady who lived in the Attapulgus Community and, although she had no knowledge of them, several witnesses and co-defendants lived in that community; a strike was exercised against juror 54 because he was a member of the Decatur County Commission with budgetary responsibilities therefor, and thus, "to some extent he has a financial interest in the outcome of this case"; and a strike was exercised against juror 61 because "older white males are usually more conservative" and because appellant was "trying to get Lillie Mae Gordon on my jury"; it was "very, very important" to reach Ms. Gordon, juror 62.

The trial court found that, with regard to the conservative nature of the jurors and the desire to reach Lillie Gordon, these explanations were not case-related; with regard to juror forty-one, the court noted that at least three black jurors who lived in the Attapulgus Community were not struck and thus, that explanation was pretext; with regard to the Decatur County Commissioner, the court determined that a financial interest in the outcome of the case by virtue of being a county commissioner was not an appropriate reason for the exercise of a strike.

Notwithstanding appellant's explanations were race-neutral on their face, the trial court found the presence of intentional discrimination apart from the nonracial reasons. *Purkett*, supra, 131 LE2d at 839 (implausible race-neutral justifications may, and probably will, be found to be pretext). A review of the record demonstrates that appellant did not attempt to relate why being conservative would impact on the instant case, why putting Ms. Gordon on his jury was so "very, very important," why juror 41's residence in the Attapulgus Community made her a more likely candidate for the use of a peremptory strike than others similarly situated, or why having an impersonal financial interest in the workings of the county, including the court system, was related to the instant case.[11]

---

[11] Any resident of a county has, "to some extent," a financial interest in trial proceedings that expend the county court's time and financial resources.

Although the burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strikes,[12] the prima facie showing, under step one, that appellant used all ten of his strikes to remove white jurors was very persuasive indeed. Thereafter, the burden shifted, under step two, to appellant to come forward with legitimate, neutral, clear, and reasonably specific explanations for challenging white jurors. *Batson*, supra at 98, n. 20. While under *Purkett* a reviewing court may not evaluate the explanations, themselves, for legitimacy, clarity, and specificity, i.e., "persuasiveness" and "plausibility," nothing about *Purkett* prevents the trial court, under step three, from engaging in such analysis, and *Batson* insists upon it.

The trial court in the case sub judice determined that appellant's explanations as to the strikes exercised against the specified jurors were not legitimate, regardless of their nonracial aspect. Based upon the record, this Court cannot say that the trial court was clearly erroneous in choosing to disbelieve the appellant's explanations, nor has appellant demonstrated such.[13] We do not find error in the court's credibility determination that appellant's explanations failed to overcome the prima facie case. *Hernandez*, supra at 372; *Lingo*, supra at 666.

*Judgment affirmed. Birdsong, P. J., concurs. Ruffin, J., concurs specially.*

RUFFIN, Judge, concurring specially.

I concur in the Court's judgment, but not in all that is said in the Court's opinion.

Error and harm are like star-crossed lovers — they meet, and they die together. Where simultaneously present, a prerequisite for reversal, error and harm are mutually illuminating. I agree with the majority that there was no error in this case, and that the correct standard is that set forth in *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 131 LE2d 834) (1995). While I agree with much in the majority's exegesis, I fear that the opinion obscures, by far, too much.

---

[12] *Purkett*, supra, 131 LE2d at 839.

[13] Appellant's argument that his justifications were race-neutral, and thus appropriate, is irrelevant since the trial court based its credibility determination on factors other than the nonracial aspect of the explanations. Further, attempts to put forward before this Court additional reasons for the use of his strikes or belated attempts to relate his explanations to the case sub judice are arguments that were not made in the court below at the time of trial, and thus, were not considered by the trial court in making its credibility decision at the time of trial. Accordingly, these additional arguments will not now be considered as a basis for reversing the trial court's decision. *Baez v. State*, 206 Ga. App. 522, 528 (425 SE2d 885) (1992); *Brooker v. State*, 164 Ga. App. 775, 778 (298 SE2d 48) (1982); see also *Lewis v. State*, 208 Ga. App. 656, 658 (431 SE2d 445) (1993); *Brantley v. State*, 177 Ga. App. 13, 14 (338 SE2d 694) (1985).

Moreover, I believe that it both skews and obscures a critical issue that is so crucial and central to today's jurisprudence. As appellate judges we oftentimes find the great in the small, the many in the few, the numberless in the number, the obscure in the obvious, the difficult in the easy, and the trivial in the true, as we say and decide what we should not.

The single issue presented in this appeal is whether the appellant's use of peremptory strikes was racially motivated. Majority opinion, p. 427. While encasing this error in context, we need only examine the issue within the ambit of *Georgia v. McCollum*, 505 U. S. 42, 59 (112 SC 2348, 120 LE2d 33) (1992).

I do not believe that the instant case, however, requires any new or extensive interpretation of *Purkett* or *McCollum*. *Purkett* clearly establishes that we must exercise restraint in reviewing a trial court's decision on a *McCollum* issue. The true precedential value of the instant case lies with the application of the *Purkett* appellate review standard to the trial court's decision regarding the defendant's reasons for striking the subject jurors. Under that standard, I agree that we must affirm the trial court and give great deference to its decision.

DECIDED MARCH 12, 1997 — ■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Kirbo & Kendrick, Bruce W. Kirbo, Jr.*, for appellant.
*J. Brown Moseley, District Attorney, John A. Warr, Assistant District Attorney*, for appellee.