## A98A0515. WILCHER v. THE STATE.
### (500 SE2d 397)

ELDRIDGE, Judge.

Appellant Willie Otis Wilcher appeals a Laurens County jury verdict finding him guilty of possession of cocaine,[1] theft by receiving stolen property (firearm), and possession of a firearm during the commission of a felony.[2] We affirm.

1. First, appellant contends that the state exercised a peremptory strike against juror no. 2 for reasons that were not race-neutral. *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). We disagree.

Following the defense challenge, the prosecution offered its reasons for the exercise of a peremptory strike against juror no. 2.[3] The

---

[1] Appellant was indicted for the greater offense of possession with intent to distribute.

[2] Following the jury's verdict, appellant pled guilty to a fourth, bifurcated count of possession of a firearm by a convicted felon.

[3] Where, as in this case, the proponent of a strike has offered race-neutral explanations

prosecutor explained that juror no. 2 did not complete the jury information questionnaire handed out prior to voir dire; the juror left off his occupation, prior jury service, and all other requested information; the juror's name was illegible on the form; and the juror gave only a partial address. In addition, the prosecutor "had trouble during the voir dire of getting information from him" and was concerned about his prior jury service, which the juror identified first as criminal and then as civil.

In response, defense counsel argued that a white juror accepted by the state, juror no. 24, was "similarly situated" in that juror no. 24 had not completely filled out the personal information portion of the questionnaire, although he had legibly and completely filled out the name and address portion thereof. Defense counsel also argued that there were other white jurors who had prior jury service, but were accepted by the state. Defense counsel did *not* challenge at trial the fact that juror no. 2 was "difficult" in terms of obtaining information and was "not responsive" to questions on voir dire.

The trial court initially disallowed the strike. The prosecution asked for reconsideration and offered the trial court juror no. 2's questionnaire "to take a look at the Clerk's questionnaire and to review how it was filled out." The prosecution argued that the telling questionnaire, "coupled" with the prior jury service and the juror's non-responsiveness on voir dire, provided sufficient race-neutral reasons to survive the *Batson* challenge. After reviewing the questionnaire, the trial court allowed the strike, ruling "We'll take the jury we have."

Appellant is correct that "[a] prosecutor's failure to explain the apparently disparate treatment of similarly situated white and black jurors . . . diminishes the force of [the] explanation for striking a black juror." *Ford v. State*, 262 Ga. 558, 560 (423 SE2d 245) (1992). However, a review of the record does not support appellant's contention that the reasons given were not applied evenhandedly. Other than appellant's bare assertion, there is nothing in the record to support appellant's contention that juror no. 24 did not fill out his jury questionnaire.[4] Further, appellant points to no other juror with the combined qualities displayed by juror no. 2: confusion as to whether he had served on a criminal or civil jury, complete failure to fill out

---

therefor and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the opponent of the strike has made a prima facie showing of racial discrimination becomes moot. *Lewis v. State*, 262 Ga. 679, 680 (2) (424 SE2d 626) (1993).

[4] The jury questionnaires were not made part of the record and are not before this Court. The trial court's factual determination to permit the strike, made after reviewing juror no. 2's allegedly incomplete questionnaire, provides support for the state's contention that the questionnaire was, in fact, lacking in information.

the jury questionnaire; *and* unresponsiveness to questions on voir dire. These reasons are race-neutral on their face.

While the opponent of a peremptory strike bears the burden of persuading the trial court that the proponent of the strike acted with discriminatory intent in exercising the peremptory challenge, *Turner v. State*, 267 Ga. 149 (476 SE2d 252) (1996), this burden of persuasion may be satisfied in a number of different ways, including solely upon the strength of the prima facie case in relation to the reasons given.[5] However, whether this burden of persuasion has been met is a decision that must be made by the trial court. *Gardner v. State*, 225 Ga. App. 427, 436 (483 SE2d 912) (1997). The trial court's factual findings in this regard must be given great deference and may be disregarded only if clearly erroneous. Id. at 434-436. From a review of the record, we cannot say that the trial court was clearly in error in finding that the state's explanations were satisfactorily race-neutral so as to overcome appellant's challenge. Id. at 438.

2. There was no error in the denial of appellant's motion for directed verdict as to the theft by receiving (firearm) count. "A directed verdict of acquittal is authorized only when there is no conflict in the evidence and the evidence and all reasonable deductions and inferences that can be drawn from it demand a verdict of acquittal. [Cit.]" *Davis v. State*, 213 Ga. App. 212 (444 SE2d 142) (1994). During the state's case in chief, Detective Wayne Cain testified that appellant told him that he "bought the gun off the street." With regard to firearm sales and all of the attendant rules and regulations therefor, we find that this was sufficient evidence of irregularity to survive a motion for directed verdict and put the issue to the jury.

"Whether or not a defendant's explanation of his possession of . . . stolen property is satisfactory or reasonable is a question for the jury." (Citations and punctuation omitted.) *Abernathy v. State*, 214 Ga. App. 364, 365 (448 SE2d 30) (1994). The jury was authorized to disbelieve appellant's explanation altogether, or to infer from it that those who traffic in weapons "on the street" are aware that they may be buying stolen property.

3. Appellant contends that his sentence was the result of "judicial vindictiveness" in retaliation for his choice to go to trial. Appellant argues that, even though the jury found appellant guilty of the *lesser* offense of simple possession, the sentence imposed after trial exceeded the negotiated sentence for a guilty plea on the indictment,

---

[5] The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. *St. Mary's Honor Center v. Hicks*, 509 U. S. 502 (113 SC 2742, 125 LE2d 407, 418-419) (1993); *Hernandez v. New York*, 500 U. S. 352, 365 (111 SC 1859, 1869, 114 LE2d 395) (1991).

which included the *greater* offense of possession with intent.

This Court previously has rejected this contention, which is essentially an attack on the plea bargain process. "While confronting a defendant with the *risk* of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable — and permissible — attribute of any legitimate system which tolerates and encourages the negotiation of pleas. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." (Citations and punctuation omitted; emphasis supplied.) *Allen v. State*, 193 Ga. App. 670, 671 (388 SE2d 889) (1989).

In this case, the state served appellant with notice of aggravation in sentencing that listed four prior felony convictions, including two for felony drug violations. These would be introduced against appellant, *if* he were convicted pursuant to a trial. Appellant chose to go to trial. That was his right. Further, the trial court was not a party to any plea agreement or negotiation in this case and was not bound by such. The trial court sentenced appellant well within statutorily permissible bounds on the offenses for which he was convicted, especially in light of the evidence introduced in aggravation.[6] Accordingly, there is no evidence of "judicial vindictiveness" in the sentence imposed.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 26, 1998.

*Celia Larsen*, for appellant.

*Ralph M. Walke, District Attorney, Swain A. Lewis, Assistant District Attorney*, for appellee.

---

[6] Appellant received a 20-year sentence on this, his fifth felony conviction. The total amount of prison time that could have been imposed was 50 years. See OCGA §§ 16-13-30 (c); 16-8-12 (a) (1); 16-11-106 (b) (5); 16-11-131 (b).