## A02A0471. BROWN v. THE STATE.
(568 SE2d 62)

ANDREWS, Presiding Judge.

Jeremiah Brown appeals from the judgment entered after a jury found him guilty of voluntary manslaughter and aggravated assault. Brown asserts several enumerations of error, among which is a claim that the trial court erred in denying his *Batson* challenge by finding that the State exercised its peremptory jury strikes in a racially neutral manner. After reviewing the record, we conclude that the State had a discriminatory purpose in striking one of the jurors and reverse.

1. In his first enumeration of error, Brown claims the trial court erred in denying his objection under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), to the State's strike of an African-American venireman. Under *Batson*, "a prosecutor may not strike a black juror solely because of his race, nor may he strike on the basis of an assumption which arises 'solely from the jurors' race,' nor may he strike 'to exclude . . . veniremen from the petit jury on account of their race.'" *Gamble v. State*, 257 Ga. 325-326 (357 SE2d 792) (1987).

> The evaluation of a *Batson* challenge involves a three-step process: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discriminatory intent.

*Thomas v. State*, 274 Ga. 156, 161 (549 SE2d 359) (2001). "The trial court's findings are, of course, entitled to great deference, *Batson*, supra, 106 SC at 1724 (fn. 21), and will be affirmed unless clearly erroneous." (Punctuation omitted.) *Gamble*, supra at 327 (5).

In this case, the venire panel was 43 percent African-American and 57 percent white. The State used four of its five peremptory strikes on African-Americans. The trial court ruled that Brown had made a prima facie showing of racial discrimination and asked the

prosecutor to state her reasons for striking the prospective juror. First, the prosecutor said that she decided to strike the juror because he had lived in the area where the crime in this case occurred. The prospective juror stated during voir dire that he moved his family out of the area because it was such a high crime area. Also, the prosecutor said that the juror, "when asked about the system being prejudiced against one based on race, he said, yes, it was. And I said, well, what do you base that opinion on? [Answer:] Living in America. So he has [sic] a black man, already indicates that he believes the system is unfair toward blacks. And in this case the defendant is black. That was a great concern to the state." The prosecutor went on to state: "And when you talk about a person feeling the system is racially prejudiced, you're not talking about racially prejudiced to a victim, you're talking about racially prejudiced to the person who is on trial or against the person who is on trial[,] who in this case is a black male, which is the same race and gender of the party that we struck." The prosecutor stated that a belief that the system was unfair to blacks was "particularly relevant when the party who is saying the system is prejudiced based on race is the same race as the defendant. That's when it becomes an issue, your honor."

Brown claims that this last statement by the prosecutor shows that the prosecutor was basing this peremptory strike on the race of the prospective juror. We agree.

As previously stated, a prosecutor may not strike an African-American juror on the basis of an assumption which arises solely from the juror's race. *Gamble*, supra at 326. Here, the prosecutor clearly stated that the juror's race was "particularly relevant" to her decision because the juror and defendant were both black.

The State argues that a distrust of the criminal justice system provides a race-neutral reason for striking the juror. That does not change the analysis. "[T]he ultimate issue in resolving a *Batson* challenge is not whether the prosecutor's stated reason for the strike is a good reason, but whether it is a pretext for racial discrimination." *Ridley v. State*, 235 Ga. App. 591, 595 (510 SE2d 113) (1998). We need look no further than the prosecutor's own explanation to determine that a "discriminatory purpose" was involved in her decision. *Duren v. Missouri*, 439 U. S. 357, 368, n. 26 (99 SC 664, 58 LE2d 579) (1979); *Gamble*, supra at 326.

Thus, the prosecutor was unable to satisfy the second step of the *Batson* analysis, that of providing a race-neutral reason for the strike. It follows that the trial court erred in ruling that Brown had not shown discriminatory intent and in overruling Brown's *Batson* challenge. Accordingly, the judgment is reversed.

2. Because the evidence meets the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), this case may be retried before a properly selected jury. *Gamble*, supra at 330.

3. Brown's remaining enumerations have been considered and are found to be without merit or to present circumstances unlikely to recur upon retrial.

*Judgment reversed. Phipps and Mikell, JJ., concur.*

DECIDED JUNE 10, 2002 —
RECONSIDERATION DENIED JUNE 28, 2002 — 

*Monique D. Moyse*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Christopher M. Quinn, Assistant District Attorneys*, for appellee.